# BLUM, COMMISSIONER, NEW YORK STATE DEPART-
# MENT OF SOCIAL SERVICES *v.* STENSON

No. 81–1374.   Argued January 11, 1984—Decided March 21, 1984

POWELL, J., delivered the opinion for a unanimous Court. BRENNAN, J., filed a concurring opinion, in which MARSHALL, J., joined, *post*, p. 902.

*Melvyn R. Leventhal*, Deputy First Assistant Attorney General of New York, argued the cause for petitioner. With him on the briefs were *Robert Abrams*, Attorney General, *Dennis H. Allee*, First Assistant Attorney General, *Peter H. Schiff*, *George D. Zuckerman*, Deputy Solicitor General, and *Marion R. Buchbinder* and *Frederick K. Mehlman*, Assistant Attorneys General.

*Leon Silverman* argued the cause for respondent. With him on the brief were *Kalman Finkel*, *Arthur J. Fried*, *John E. Kirklin*, and *Linda R. Blumkin*.*

*Briefs of *amici curiae* urging reversal were filed for the United States by *Solicitor General Lee*, *Assistant Attorney General McGrath*, *Deputy Solicitor General Geller*, *Deputy Assistant Attorney General Kuhl*, *Joshua I. Schwartz*, *William Kanter*, and *Mark W. Pennak;* for the State of Alabama et al. by *Kenneth O. Eikenberry*, Attorney General of Washington, and *Thomas F. Carr*, Senior Assistant Attorney General, joined by the Attorneys General for their respective States as follows: *Charles A. Graddick* of Alabama, *Norman C. Gorsuch* of Alaska, *Robert K. Corbin* of Arizona, *Duane Woodard* of Colorado, *Joseph Lieberman* of Connecticut, *Jim Smith* of Florida, *Michael J. Bowers* of Georgia, *Tany S. Hong* of Hawaii, *Jim*

JUSTICE POWELL delivered the opinion of the Court.

Title 42 U. S. C. § 1988 (1976 ed., Supp. V) provides that in federal civil rights actions "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." The initial estimate of a reasonable attorney's fee is properly calculated by multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate. *Hensley* v. *Eckerhart,* 461 U. S. 424 (1983). Adjustments to that fee then may be made as necessary in the particular case. The

*Jones* of Idaho, *Neil Hartigan* of Illinois, *Linley E. Pearson* of Indiana, *Thomas J. Miller* of Iowa, *Robert T. Stephan* of Kansas, *William J. Guste, Jr.,* of Louisiana, *Stephen H. Sachs* of Maryland, *Frank J. Kelley* of Michigan, *Hubert H. Humphrey III* of Minnesota, *John D. Ashcroft* of Missouri, *Michael T. Greely* of Montana, *Paul L. Douglas* of Nebraska, *Brian McKay* of Nevada, *Gregory H. Smith* of New Hampshire, *Irwin I. Kimmelman* of New Jersey, *Rufus L. Edmisten* of North Carolina, *Robert O. Wefald* of North Dakota, *Anthony J. Celebrezze, Jr.,* of Ohio, *Michael Turpen* of Oklahoma, *David B. Frohnmayer* of Oregon, *LeRoy S. Zimmerman* of Pennsylvania, *Dennis J. Roberts II* of Rhode Island, *Mark V. Meierhenry* of South Dakota, *William M. Leech, Jr.,* of Tennessee, *David L. Wilkinson* of Utah, *John J. Easton* of Vermont, *Gerald L. Baliles* of Virginia, *Chauncey H. Browning* of West Virginia, *Bronson C. La Follette* of Wisconsin, and *Archie G. McClintock* of Wyoming; and for the Commonwealth of Massachusetts by *Francis X. Bellotti,* Attorney General, *Thomas R. Kiley,* First Assistant Attorney General, and *Judith S. Yogman* and *Carl Valvo,* Assistant Attorneys General.

Briefs of *amici curiae* urging affirmance were filed for the Alliance for Justice by *Laura Macklin;* for the California Coalition of Welfare Rights Organizations by *Mary S. Burdick* and *Richard A. Rothschild;* for the NAACP Legal Defense and Educational Fund, Inc., et al. by *Jack Greenberg, James M. Nabrit III, Charles Stephen Ralston, Steven L. Winter, Fred N. Fishman, Robert H. Kapp, Norman Redlich, William L. Robinson, Norman J. Chachkin, E. Richard Larson, Burt Neuborne, Kenneth Kimerling, Joaquin G. Avila,* and *Morris J. Baller;* for the National Education Association et al. by *Michael H. Gottesman, Robert M. Weinberg, Julia Penny Clark, Robert H. Chanin,* and *Lawrence A. Poltrock;* for the New York State Bar Association et al. by *Haliburton Fales II;* and for Oliver Hill et al. by *Armand Derfner* and *Stephen P. Berzon.*

two issues in this case are whether Congress intended fee awards to nonprofit legal service organizations to be calculated according to cost or to prevailing market rates, and whether, and under what circumstances, an upward adjustment of an award based on prevailing market rates is appropriate under § 1988.

I

A

This suit was brought in 1978 by respondent on behalf of a statewide class of Medicaid[1] recipients pursuant to 42 U. S. C. § 1983 in the District Court for the Southern District of New York. Under New York law, one who is eligible to receive benefits under the Supplemental Security Income (SSI) program, 42 U. S. C. § 1381 *et seq.* (1976 ed. and Supp. V), automatically is eligible to receive Medicaid benefits. N. Y. Soc. Serv. Law § 363 *et seq.* (McKinney 1976). Prior to this suit, persons who qualified for Medicaid in this fashion automatically lost their benefits if they thereafter became ineligible for SSI payments. The case was decided on cross-motions for summary judgment after only one set of plaintiff's interrogatories had been served and answered. On these motions, the District Court certified the class[2] and rendered final judgment in favor of the class.

---

[1] Medicaid is a program providing medical assistance to the needy. It is jointly funded by the State and Federal Governments. 42 U. S. C. §§ 1396–1396k (1976 ed., Supp. V); N. Y. Soc. Serv. Law §§ 363–369 (McKinney 1976).

[2] The certified class consisted of:

"New York State residents who received Medicaid due to their eligibility for SSI and whose Medicaid benefits have been terminated because of subsequent ineligibility for SSI without having received one or more of the following: (a) an *ex parte* determination of continued eligibility for Medicaid, independent of eligibility for SSI; (b) timely and adequate notice of such termination; (c) an opportunity for a hearing." *Stenson* v. *Blum*, 476 F. Supp. 1331, 1335 (1979).

The court enjoined the prior practice of automatic termination of benefits, and prescribed procedural rights for the certified class that included "(a) an *ex parte* determination of continued eligibility for Medicaid, independent of eligibility for SSI; (b) timely and adequate notice of such termination; (c) an opportunity for a hearing." *Stenson* v. *Blum*, 476 F. Supp. 1331, 1335 (1979). The Court of Appeals for the Second Circuit affirmed in an unpublished oral opinion from the bench. Affirmance order, *Stenson* v. *Blum*, 628 F. 2d 1345, cert. denied, 449 U. S. 885 (1980). Respondent's subsequent request for an award of reasonable attorney's fees under § 1988 is the subject of the present case.

## B

Throughout this litigation, respondent was represented by attorneys from the Legal Aid Society of New York, a private nonprofit law office.[3] In November 1980, respondent filed a request for attorney's fees for the period December 1978 through the end of the litigation. Her three attorneys sought payment for some 809 hours of work at rates varying from $95 to $105 per hour.[4] This amounted to approxi-

---

[3] The Legal Aid Society, based in New York City, is a private, nonprofit law office dedicated since 1876 to providing legal representation to persons who cannot afford a lawyer. It may well be the oldest formally organized legal aid society in the United States. It enjoys a wide reputation for the devotion of its staff and the quality of its service. We are told that some three-fourths of the budget of its Civil Division is funded by nongovernmental contributors. See The Legal Aid Society 1983 Annual Report 49–52.

[4] Ann Moynihan billed 487 hours and 50 minutes at $95 per hour. 512 F. Supp. 680, 682 (1981). She graduated from law school in 1977, and at the outset of this litigation, she had 1½ years of experience as a practicing attorney. App. 320–321. Paula Galowitz billed 166 hours and 15 minutes at $100 per hour. 512 F. Supp., at 682. She graduated from law school in 1976 and served as a law clerk to a state judge during her first year after graduation. She had 1½ years of experience as a practicing attorney at the Legal Aid Society at the outset of this litigation. App. 335. Arthur Fried billed 155 hours and 40 minutes at $105 per hour. 512 F. Supp., at 682. (The parties agree that the 115 hours noted in the District Court's

mately $79,312. Respondent's total fee request, however, reflected a 50% increase in that fee. In her brief to the District Court, respondent explained that such an increase was necessary to compensate for the complexity of the case, the novelty of the issues, and the "great benefit" achieved. The total requested fee amounted to approximately $118,968. Petitioner opposed the fee award on the grounds that the rates were exorbitant, the number of hours charged were unreasonable and duplicative, and the 50% "bonus" was improper.

Petitioner submitted no evidence to support her claim that the hours and rates charged by respondent were unreasonable. Instead, petitioner rested her claim that the hours were duplicative and excessive and the rates exorbitant on arguments contained in her brief to the District Court and on that court's discretion. Petitioner requested an evidentiary hearing on the issue of reasonable billable hours only if the District Court found that the discussion in her brief did not justify reductions in the number of hours charged. Finally, petitioner argued that the 50% "bonus" requested by respondent was improper because it would be paid by the public.

The District Court held that both the hours expended and the rates charged were reasonable. It also held that the fee calculated by multiplying the number of hours times the hourly rates should be increased by the requested 50% because of the quality of representation, the complexity of the issues, the riskiness of success, and the "great benefit to a large class" that was achieved. 512 F. Supp. 680, 685 (1981). The District Court awarded the plaintiff class the requested fee of $118,968.

The Court of Appeals affirmed in an unpublished opinion. No. 81–7385 (CA2, Oct. 19, 1981). Affirmance order, 671

---

table is a typographical error.) He graduated from law school in 1975 and served as a law clerk to a United States District Court Judge for the first two years thereafter. He had 1½ years experience as a practicing attorney at the Legal Aid Society at the outset of litigation. App. 308–309,

F. 2d 493 (1981). We granted certiorari to consider whether it was proper for the District Court to use prevailing market rates in awarding attorney's fees to nonprofit legal services organizations and whether the District Court abused its discretion in increasing the fee award above that based on market rates. 461 U. S. 956 (1983).[5]

## II

Petitioner argues that the use of prevailing market rates to calculate attorney's fees under § 1988 leads to exorbitant fee awards and provides windfalls to civil rights counsel contrary to the express intent of Congress. To avoid this result, petitioner urges this Court to require that all fee awards under § 1988 be calculated according to the cost of providing legal services rather than according to the prevailing market rate.[6] The Solicitor General, for the United States as *amicus curiae*, urges the Court to adopt a cost-related standard only for fee awards made to nonprofit legal aid organizations. He

---

[5] Petitioner does not renew here her argument that the hourly rates claimed by respondent's counsel were out of line with the "prevailing market rate" for private counsel of comparable experience, skill, and reputation. Petitioner claims only that hourly rates for § 1988 fee awards should be based on cost rather than on prevailing market rates. See Brief for Petitioner 12–13, 15–21. We decline to consider petitioner's further argument that the hours charged by respondent's counsel were unreasonable. As noted above, petitioner failed to submit to the District Court any evidence challenging the accuracy and reasonableness of the hours charged, see *Hensley* v. *Eckerhart*, 461 U. S. 424, 437, and n. 12 (1983), or the facts asserted in the affidavits submitted by respondent's counsel. She therefore waived her right to an evidentiary hearing in the District Court. See *City of Detroit* v. *Grinnell Corp.*, 495 F. 2d 448, 472–473 (CA2 1974) (where facts are disputed, an evidentiary hearing is required before a district court determines a proper attorney's fee award). In view of the trial strategy she chose, petitioner waived her right to challenge in this Court the District Court's determination that the number of hours billed were reasonable for cases of similar complexity.

[6] Petitioner specifically proposes that fees be based on "the cost of providing [legal] services plus, where appropriate, a margin for profit." Brief for Petitioner 17.

argues that market rates reflect the level of compensation necessary to attract profit-making attorneys, but that such rates provide excessive fees to nonprofit counsel. Because market rates incorporate operating expenses that may exceed the expenses of nonprofit legal services organizations, and include an element of profit unnecessary to attract nonprofit counsel, the Solicitor General argues that fee awards based on market rates "confer an unjustified windfall or subsidy upon legal services organizations." Brief for United States as *Amicus Curiae* 6.

Resolution of these two arguments begins and ends with an interpretation of the attorney's fee statute. The Civil Rights Attorney's Fees Awards Act of 1976, 90 Stat. 2641, 42 U. S. C. § 1988 (1976 ed., Supp. V), authorizes district courts to award a reasonable attorney's fee to prevailing civil rights litigants.[7] In enacting the statute, Congress directed that attorney's fees be calculated according to standards currently in use under other fee-shifting statutes:

> "It is intended that the amount of fees awarded under [§ 1988] be governed by the same standards which prevail in other types of equally complex Federal litigation, such as antitrust cases[,] and not be reduced because the rights involved may be nonpecuniary in nature. The appropriate standards, see *Johnson* v. *Georgia Highway Express*, 488 F. 2d 714 (5th Cir. 1974), are correctly applied in such cases as *Stanford Daily* v. *Zurcher*, 64 F. R. D. 680 (N. D. Cal. 1974); *Davis* v. *County of Los Angeles*, 8 E. P. D. ¶ 9444 (C. D. Cal. 1974); and *Swann* v. *Charlotte-Mecklenburg Board of Education*, 66 F. R. D. 483 (W. D. N. C. 1975). These cases have resulted in fees which are adequate to attract competent

---

[7] Section 1988 provides in relevant part:

"In any action or proceeding to enforce a provision of sections 1981, 1982, 1983, 1985, and 1986 of this title . . . , the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs."

counsel, but which do not produce windfalls to attorneys." S. Rep. No. 94–1011, p. 6 (1976).[8]

In all four of the cases cited by the Senate Report, fee awards were calculated according to prevailing market rates.[9] None of these four cases made any mention of a cost-based standard.[10] Petitioner's argument that the use of market rates violates congressional intent, therefore, is flatly contradicted by the legislative history of § 1988.

It is also clear from the legislative history that Congress did not intend the calculation of fee awards to vary depending on whether plaintiff was represented by private counsel or by a nonprofit legal services organization. The citations to *Stanford Daily* v. *Zurcher*, 64 F. R. D. 680 (ND Cal. 1974), and *Davis* v. *County of Los Angeles*, 8 EPD ¶9444 (CD Cal.

---

[8] Accord H. R. Rep. No. 94–1558, p. 8 (1976).

[9] See *Johnson* v. *Georgia Highway Express, Inc.*, 488 F. 2d 714, 718 (CA5 1974) ("The customary fee for similar work in the community should be considered"); *Stanford Daily* v. *Zurcher*, 64 F. R. D. 680, 682 (ND Cal. 1974) ("[In making the fee award,] the court will consider . . . the value of the [attorney's] time in light of billing rates . . ."); *Davis* v. *County of Los Angeles*, 8 EPD ¶9444, at 5048 (CD Cal. 1974) (fee award calculated by multiplying number of hours expended times the "normal hourly rates" for attorneys of like skill and experience); *Swann* v. *Charlotte-Mecklenburg Board of Education*, 66 F. R. D. 483, 486 (WDNC 1975) (fee award calculated with reference to hourly rates generally charged in federal litigation).

[10] Congress was legislating in light of experience when it enacted the 1976 fee statute. By that time, courts were familiar with calculating fee awards for civil litigation under Title VII of the Civil Rights Act of 1964, 42 U. S. C. § 2000e–5(k), and under the judicially established "private attorney general" theory that had prevailed prior to this Court's decision in *Alyeska Pipeline Service Co.* v. *Wilderness Society*, 421 U. S. 240 (1975). None of the cases decided at that time had adopted a cost-based approach to calculating fees. Reference to market rate was uniform. See, *e. g.*, *Waters* v. *Wisconsin Steel Works*, 502 F. 2d 1309, 1322 (CA7 1974), cert. denied, 425 U. S. 997 (1976); *Evans* v. *Sheraton Park Hotel*, 164 U. S. App. D. C. 86, 96, 503 F. 2d 177, 187 (1974); *Tillman* v. *Wheaton-Haven Recreation Assn., Inc.*, 517 F. 2d 1141, 1148 (CA4 1975); *Kerr* v. *Screen Extras Guild, Inc.*, 526 F. 2d 67, 69–70 (CA9 1975), cert. denied *sub nom. Perkins* v. *Screen Extras Guild, Inc.*, 425 U. S. 951 (1976).

1974), make this explicit. In *Stanford Daily*, the court held that it "must avoid . . . decreasing reasonable fees because the attorneys conducted the litigation more as an act of pro bono publico than as an effort at securing a large monetary return." 64 F. R. D., at 681. In *Davis*, the court held:

> "In determining the amount of fees to be awarded, it is not legally relevant that plaintiffs' counsel . . . are employed by . . . a privately funded non-profit public interest law firm. It is in the interest of the public that such law firms be awarded reasonable attorneys' fees to be computed in the traditional manner when its counsel perform legal services otherwise entitling them to the award of attorneys' fees." 8 EPD, at 5048–5049.

We cannot assume that Congress would endorse the standards used in *Johnson* v. *Georgia Highway Express, Inc.*, 488 F. 2d 714 (CA5 1974), *Stanford Daily*, *Davis*, and *Swann* v. *Charlotte-Mecklenburg Board of Education*, 66 F. R. D. 483 (WDNC 1975), if fee awards based on market rates were viewed as the kind of "windfall profits" it expressly intended to prohibit.

The statute and legislative history establish that "reasonable fees" under § 1988 are to be calculated according to the prevailing market rates in the relevant community, regardless of whether plaintiff is represented by private or non-profit counsel.[11] The policy arguments advanced in favor of a

---

[11] We recognize, of course, that determining an appropriate "market rate" for the services of a lawyer is inherently difficult. Market prices of commodities and most services are determined by supply and demand. In this traditional sense there is no such thing as a prevailing market rate for the service of lawyers in a particular community. The type of services rendered by lawyers, as well as their experience, skill, and reputation, varies extensively—even within a law firm. Accordingly, the hourly rates of lawyers in private practice also vary widely. The fees charged often are based on the product of hours devoted to the representation multiplied by the lawyer's customary rate. But the fee usually is discussed with the client, may be negotiated, and it is the client who pays whether he wins or loses. The § 1988 fee determination is made by the court in an entirely

cost-based standard should be addressed to Congress rather than to this Court.

## III

We address now the second question presented: whether a 50% upward adjustment in the fee was—as petitioner argues—an abuse of discretion by the District Court.[12]   Petitioner makes two separate but related arguments.   First, she asserts that a reasonable attorney's fee is calculated by multiplying the reasonable number of hours expended times a reasonable hourly rate and that any upward adjustment of that fee is improper.   In the alternative, she argues that the 50% upward adjustment in this case constitutes a clear abuse of discretion.

## A

Where, as here, resolution of a question of federal law turns on a statute and the intention of Congress, we look first to the statutory language and then to the legislative history if the statutory language is unclear.   In actions to enforce federal civil rights, § 1988 authorizes a court, "in its discretion,"

---

different setting: there is no negotiation or even discussion with the prevailing client, as the fee—found to be reasonable by the court—is paid by the losing party.   Nevertheless, as shown in the text above, the critical inquiry in determining reasonableness is now generally recognized as the appropriate hourly rate.   And the rates charged in private representations may afford relevant comparisons.

In seeking some basis for a standard, courts properly have required prevailing attorneys to justify the reasonableness of the requested rate or rates.   To inform and assist the court in the exercise of its discretion, the burden is on the fee applicant to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.   A rate determined in this way is normally deemed to be reasonable, and is referred to—for convenience—as the prevailing market rate.

[12] The District Court characterized the 50% increase as a "bonus."   The Court of Appeals, in its brief opinion, spoke of it as an "upward adjustment."   As we think the latter characterization is fairer, we will use it.

to "allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." The legislative history explains that "a reasonable attorney's fee" is one that is "adequate to attract competent counsel, but . . . [that does] not produce windfalls to attorneys." S. Rep. No. 94–1011, p. 6 (1976). As noted, the Senate Report identified four cases that had calculated correctly a reasonable attorney's fee.[13]

In *Hensley* v. *Eckerhart*, 461 U. S. 424 (1983), we reviewed the cases cited in the legislative history of § 1988 and concluded that the "product of reasonable hours times a reasonable rate" normally provides a "reasonable" attorney's fee within the meaning of the statute. *Id.*, at 434. *Hensley* also recognized that "in some cases of exceptional success an enhanced award may be justified." *Id.*, at 435.[14] In view of our recognition that an enhanced award may be justified "in some cases of exceptional success," we cannot agree with petitioner's argument that an "upward adjustment" is never permissible. The statute requires a "reasonable fee," and there may be circumstances in which the basic standard of reasonable rates multiplied by reasonably expended hours results in a fee that is either unreasonably low or unreasonably high. When, however, the applicant for a fee has carried his burden of showing that the claimed rate and number of hours are reasonable, the resulting product is presumed to be the reasonable fee contemplated by § 1988.

---

[13] Specifically, the Senate Report expressly approved the 12 factors that the Court of Appeals for the Fifth Circuit had used in calculating a fee award in *Johnson* v. *Georgia Highway Express, Inc.*, 488 F. 2d 714 (1974). It then identified three cases as having "correctly applied" those 12 factors. See *supra*, at 893–894.

[14] At another point in *Hensley*, the Court observed that the "product of reasonable hours times a reasonable rate does not end the inquiry. There remain other considerations that may lead the district court to adjust the fee upward or downward, including the important factor of the 'results obtained.'" 461 U. S., at 434.

## B

The issue remaining is the appropriateness of an upward adjustment to the fee award in this case. The burden of proving that such an adjustment is necessary to the determination of a reasonable fee is on the fee applicant. The record before us contains no evidence supporting an upward adjustment to fees calculated under the basic standard of reasonable rates times reasonable hours. The affidavits of respondent's attorneys do not claim, or even mention, entitlement to a bonus or upward revision. Respondent's brief to the District Court merely states in conclusory fashion that an upward adjustment to the fee is necessary because the issues were novel, the litigation was complex, and the results were of far-reaching significance to a large class of people. The District Court, without elaboration, accepted these conclusory reasons for approving the upward adjustment and supplied additional reasons of its own. In awarding the 50% increase, the court referred to the complexity of the litigation, the novelty of the issues, the high quality of representation, the "great benefit" to the class, and the "riskiness" of the lawsuit. The Court of Appeals, in affirming, shed no light on why it thought this substantial upward adjustment was appropriate. In a single sentence, it simply repeated the unsupported conclusions of the District Court.

The reasons offered by the District Court to support the upward adjustment do not withstand examination. The novelty and complexity of the issues presumably were fully reflected in the number of billable hours recorded by counsel and thus do not warrant an upward adjustment in a fee based on the number of billable hours times reasonable hourly rates. There may be cases, of course, where the experience and special skill of the attorney will require the expenditure of fewer hours than counsel normally would be expected to spend on a particularly novel or complex issue. In those cases, the special skill and experience of counsel should be reflected in the reasonableness of the hourly rates. Neither complexity nor novelty of the issues, therefore, is an appro-

priate factor in determining whether to increase the basic fee award.

The District Court, having tried the case, was in the best position to conclude that "the quality of representation was high." In view of the reputation of the Legal Aid Society and its staff, we have no doubt that this was true.[15] The "quality of representation," however, generally is reflected in the reasonable hourly rate. It, therefore, may justify an upward adjustment only in the rare case where the fee applicant offers specific evidence to show that the quality of service rendered was superior to that one reasonably should expect in light of the hourly rates charged and that the success was "exceptional." See *Hensley*, 461 U. S., at 435. Respondent offered no such evidence in this case, and on this record the District Court's rationale for providing an upward adjustment for quality of representation is a clear example of double counting. In justifying the high hourly rates used to calculate the fee award, the District Court explained:

> "The rates requested here are consonant with fee awards in cases of similar complexity and difficulty. . . . [T]hey are fair in view of these attorneys['] experience and expertise . . . . The quality of work performed by counsel throughout this case was high. In view of all these considerations, I do not find the requested rates, from $95 per hour to $105 per hour, excessive." 512 F. Supp., at 683.

In justifying the upward adjustment to the fee award, the District Court merely restated these same two factors: "The quality of representation was high. The litigation was complex." *Id.*, at 685.

---

[15] Each of respondent's counsel had admirable records as scholars, and two had valuable clerkship experience. They also were specializing in social security type claims against the Government. Yet none of them, at the outset of this suit in December 1978, had more than 1½ years' experience as practicing lawyers. See n. 4, *supra*. As the term "experience" normally is used, this is quite limited.

Not only has respondent failed to show that the hourly rates failed to provide a reasonable fee for the quality of representation provided, but she candidly concedes that the "fees awarded [to her attorneys] may be at the upper end of the market for awards under § 1988 . . . ." Brief for Respondent 42. Absent specific evidence to the contrary, we cannot say that rates from $95 per hour to $105 per hour for these three attorneys do not fully reflect the quality of their representation.

The 50% upward adjustment also was based in part on the District Court's determination that the ultimate outcome of the litigation "was of great benefit to a large class of needy people." 512 F. Supp., at 685. The court did not explain, however, exactly how this determination affected the fee award. "Results obtained" is one of the 12 factors identified in *Johnson* v. *Georgia Highway Express*, 488 F. 2d, at 718, as relevant to the calculation of a reasonable attorney's fee. It is "particularly crucial where a plaintiff is deemed 'prevailing' even though he succeeded on only some of his claims for relief." *Hensley, supra,* at 434 (fee award must be reduced by the number of hours spent on unsuccessful claims). Because acknowledgment of the "results obtained" generally will be subsumed within other factors used to calculate a reasonable fee, it normally should not provide an independent basis for increasing the fee award.[16] Neither the District Court's opinion nor respondent's briefs have identified record evidence that shows that the benefit achieved requires an upward adjustment to the fee.

---

[16] Nor do we believe that the *number* of persons benefited is a consideration of significance in calculating fees under § 1988. Unlike the calculation of attorney's fees under the "common fund doctrine," where a reasonable fee is based on a percentage of the fund bestowed on the class, a reasonable fee under § 1988 reflects the amount of attorney time reasonably expended on the litigation. Presumably, counsel will spend as much time and will be as diligent in litigating a case that benefits a small class of people, or, indeed, in protecting the civil rights of a single individual.

Finally, the District Court included among its reasons for an upward adjustment a statement that the "issues presented were novel and the undertaking therefore risky." 512 F. Supp., at 685. Absent any claim in the affidavits or briefs submitted in support of respondent's fee request, seeking such an adjustment, we cannot be sure what prompted the court's statement. Nowhere in the affidavits submitted in support of respondent's fee request, nor in her brief to the District Court, did respondent identify any risks associated with the litigation or claim that the risk of nonpayment required an upward adjustment to provide a reasonable fee. On this record, therefore, any upward adjustment for the contingent nature of the litigation was unjustified.[17]

In sum, we reiterate what was said in *Hensley:* "Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation, and indeed in some cases of exceptional success an enhanced award may be justified." 461 U. S., at 435. We therefore reject petitioner's argument that an upward adjustment to an attorney's fee is never appropriate under § 1988.[18] On the record before us, however, respondent established only that hourly rates ranging from $95 per hour to $105 per hour for the full 809.75 hours billed were reasonable. This resulted in a charge of $79,312. Respondent introduced no evidence that enhancement was necessary to provide fair and reasonable compensation. She therefore has failed to carry her burden

---

[17] We have no occasion in this case to consider whether the risk of not being the prevailing party in a § 1983 case, and therefore not being entitled to an award of attorney's fees from one's adversary, may ever justify an upward fee adjustment.

[18] In Part II of this opinion, we declined to draw a distinction with respect to the use of market rates between profit and nonprofit law offices. Similarly, in the rare case in which an upward adjustment to the presumptively reasonable fee of rate times hours is appropriate, we draw no distinction between profit and nonprofit law offices.

of justifying entitlement to an upward adjustment.[19]   On this record, we conclude that the fee of $79,312 was "fully compensatory."   Accordingly, the judgment below is reversed only insofar as the fee award was increased by the sum of $39,656, and is otherwise affirmed.

*It is so ordered.*

JUSTICE BRENNAN, with whom JUSTICE MARSHALL joins, concurring.

I join the Court's opinion.   I write separately only to reaffirm my view that Congress has clearly indicated that the risk of not prevailing, and therefore the risk of not recovering any attorney's fees, is a proper basis on which a district court may award an upward adjustment to an otherwise compensatory fee.   See *Hensley* v. *Eckerhart,* 461 U. S. 424, 448–449 (1983) (BRENNAN, J., concurring in part and dissenting in part).

Although the Court leaves the question unresolved, see *ante,* at 901, n. 17, the legislative history that always has controlled our interpretation of § 1988, and that proves determinative on the other issues addressed by today's decision, also determines whether an upward adjustment to compensate for the risk of nonpayment may be justified.   In particular, Congress referred to *Johnson* v. *Georgia Highway Express, Inc.,* 488 F. 2d 714 (CA5 1974), for the appropriate standards to be applied by courts awarding attorney's fees under § 1988.   See *ante,* at 893–896.   *"Whether the fee is fixed or contingent,"* 488 F. 2d, at 718 (emphasis in original), was consequently

---

[19] As we stated in *Hensley,* a "request for attorney's fees should not result in a second major litigation."   *Hensley,* 461 U. S., at 437.   Parties to civil rights litigation in particular should make a conscientious effort, where a fee award is to be made, to resolve any differences.   A district court is expressly empowered to exercise discretion in determining whether an award is to be made and if so its reasonableness.   The court, with its intimate knowledge of the litigation, has a responsibility to encourage agreement.

recognized by Congress as a relevant consideration in setting a reasonable fee. Moreover, Congress explicitly cited *Stanford Daily* v. *Zurcher*, 64 F. R. D. 680 (ND Cal. 1974) (subsequently aff'd, 550 F. 2d 464 (CA9 1977), rev'd on other grounds, 436 U. S. 547 (1978)), as one of several cases that had "correctly applied" the appropriate standards. S. Rep. No. 94–1011, p. 6 (1976). In *Stanford Daily*, the District Court concluded that a court may "increase the fees award obtained by multiplying the number of hours by the average billing rate to reflect the fact that the attorneys' compensation, at least in part, was contingent in nature." 64 F. R. D., at 685–686. It is clear, therefore, that Congress authorized district courts to award upward adjustments to compensate for the contingent nature of success, and thus for the risk of nonpayment in a particular case.

Indeed, allowing district courts to award such upward adjustments is entirely consistent with the market-based approach to hourly rates that is today reaffirmed by the Court. Lawyers operating in the marketplace can be expected to charge a higher hourly rate when their compensation is contingent on success than when they will be promptly paid, irrespective of whether they win or lose. Similarly, it is necessary to account for this risk in fee awards under § 1988, either by increasing the appropriate hourly rate or by enhancing the fee otherwise calculated with the use of an hourly rate that does not reflect the risk of not prevailing.* This

---

*Contingency adjustments under § 1988 should not be confused with contingency fee arrangements that are commonly entered into by private attorneys representing plaintiffs in civil litigation. An upward adjustment to compensate for the risk of nonpayment under § 1988 is "entirely unrelated to the 'contingent fee' arrangements that are typical in plaintiffs' tort representation. In tort suits, an attorney might receive one-third of whatever amount the plaintiff recovers. In those cases, therefore, the fee is directly proportional to the recovery. Such is not the case in contingency adjustments of the kind . . . describe[d] herein. Th[is] contingency adjustment is a percentage increase in the [amount obtained by multiplying

will ensure that fees under § 1988 are consistent with prevailing market rates, see *ante*, at 893–894, and n. 9, that nonprofit legal service organizations and private attorneys are treated similarly, see *ante*, at 894–895, and n. 18, and that the attorney's fees awarded are "adequate to attract competent counsel" to represent other clients with civil rights grievances, S. Rep. No. 94–1011, p. 6 (1976); H. R. Rep. No. 94–1558, p. 9 (1976).

---

hours expended by hourly rate, and is designed] to reflect the risk that no fee will be obtained." *Copeland* v. *Marshall*, 205 U. S. App. D. C. 390, 403, 641 F. 2d 880, 893 (1980) (en banc).