**In the Matter of KERO–SUN, INC., Debtor.**

**Bankruptcy No. 2–83–00764.**

United States Bankruptcy Court, D. Connecticut.

March 24, 1986.

Robert R. Leinwand, Javits, Robinson, Brog, Leinwand & Reich, P.C., New York City, Michael P. Berman, Berman, Sable & Boatman, P.C., Hartford, Conn., for debtor.

Charles M. Needle, Zeldes, Needle & Cooper, P.C., Bridgeport, Conn., for applicant.

Thomas M. Germain, Yules & Yules, Hartford, Conn., for Warren Fleming & Assoc., Inc., creditor.

MEMORANDUM OF DECISION ON APPLICATION OF ZELDES, NEEDLE AND COOPER, P.C., COUNSEL TO THE OFFICIAL CREDITORS' COMMITTEE, FOR AN UPWARD ADJUSTMENT OF COMPENSATION

ROBERT L. KRECHEVSKY, Chief Judge.

I.

This ruling deals with the standards governing an attorney's request in a bankruptcy case for a fifteen percent upward adjustment of compensation initially calculated on a reasonable-hourly-rate basis. On January 17, 1986, after notice and a hearing, the court approved, without prejudice to the request for the upward adjustment, the total sum of $112,771.50 as compensation for legal services rendered by Zeldes, Needle and Cooper, P.C. (applicant) as attorneys for the official unsecured creditors' committee (committee) in the chapter 11 case of Kero-Sun, Inc. (debtor). These fees

covered services from March 2, 1984 through October 31, 1985, during which period the applicant expended 886 hours of attorney and paralegal time. The great majority of this time (678 hours) was attributable to Charles M. Needle (Needle) as the law firm partner primarily responsible for the actions and results hereinafter described. The applicant had been allowed, and had received, three interim payments during this period amounting to approximately seventy-five percent of the final award.

Section 330 of the Bankruptcy Code provides that the court may award professionals "reasonable compensation for actual, necessary services rendered ..., based on the nature, the extent, and the value of such services, the time spent on such services, and the cost of comparable services other than in a [bankruptcy] case ...." The $112,771.50 awarded by the court on January 17, 1986 reflected all hours listed by the applicant at the hourly rates requested. The court concluded that the high quality and beneficial services referred to in the fee application and observed, in part, by the court, merited Needle's request for an hourly rate of $125.00 for the period to July 1, 1984, and $150.00 thereafter. The applicant's request for an upward adjustment amounts to $16,916.72, and is premised on the following background.

## II.

### A.

On October 16, 1985, the court confirmed a plan proposed by the debtor and which had been the subject of intensive negotiations between the debtor and the committee. Under the plan unsecured creditors whose claims had not previously been acquired by an agent of the debtor received in cash eighty-five percent of their allowed claims. The plan requires that the debtor pay all administration expenses. The debtor did not contest the applicant's claim for an allowance of $112,771.50, and, indeed, supported it. The debtor did, however, object to the request for a fifteen percent upward adjustment, and the debtor and the applicant have filed post-hearing memoranda in support of their positions. Neither party offered testimony to support or refute the contents of the applicant's application at the fee hearing.

### B.

The applicant contends that its "skill and professionalism exhibited in each of [the following described] tasks warrants [sic] the bonus requested":

1) making a comprehensive investigation of the affairs of the Debtor, 2) addressing the novel and difficult legal problems that had to be understood, researched and evaluated, including the tax rebate issue, which was an issue that involved a sum in excess of Twenty Million ($20,000,000.00) Dollars, 3) creating the atmosphere which permitted meaningful negotiations to take place, 4) engaging in difficult negotiations over a lengthy period of time resulting in an extremely favorable result for unsecured creditors and 5) assisting in the final drafting and execution of a Plan of Reorganization.

*Applicant's memo.* at 2–3. The statement by the applicant of the "extremely favorable result for unsecured creditors" refers to the raising of the offer by the debtor to unsecured creditors from an original twenty-five percent of allowed claims to the eighty-five percent cash payment contained in the plan.

The debtor asserts that the applicant has not demonstrated that it provided "such unique and extraordinary services that would justify an award of a bonus. Its firm worked competently to resolve the many questions and difficulties posed to it, but such is expected of counsel that undertakes to represent the creditors in a case of this magnitude." *Debtor's memo.* at 8–9. Debtor further claims that the allowance of additional compensation "could hinder the reorganized Debtor's ability to comply with the terms of its plan of reorganization and efforts to remain a viable entity." *Id.* at 9.

### III.

#### A.

The Supreme Court has stated, with reference to court-awarded attorney fees, that "[t]he most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate" (hereinafter "lodestar figure"). *Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983) (attorney fees awarded to a prevailing party in federal civil rights actions under the Civil Rights Attorney's Fee Awards Act of 1976 (42 U.S.C. § 1988)). The Court went on to indicate that additional considerations may lead a court to adjust the fee upward or downward by considering some of the twelve factors derived from the American Bar Association Code of Professional Responsibility DR 2–106 and identified in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir.1974).[1] The Court noted, however, that many of the *Johnson* factors "usually are subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate." 461 U.S. at 434 n. 9, 104 S.Ct. at 1940 n. 9.

#### B.

To supplement § 64(a)(1) of the Bankruptcy Act of 1898 (granting priority for costs of administration), Bankr.R. 219(c)(1) provided for "reasonable" compensation for professional persons, with the court to give "due consideration to the nature, extent, and value of the services rendered as well as to the *conservation of the estate and the interest of creditors.*" (Emphasis added.) The standards under § 330 are very similar, except for one important difference. Pursuant to "principles of economy", courts under the prior law generally compensated attorneys appointed in the

case at lower rates than such attorneys would be paid if privately employed, *York Intern. Bldg., Inc. v. Chaney (In re York Intern. Bldg., Inc.),* 527 F.2d 1061, 1069 (9th Cir.1975). The present law specifically provides for compensation at rates for comparable services in nonbankruptcy cases. The legislative history of § 330 states that this change was designed to ensure participation by bankruptcy specialists, "who enable the system to operate smoothly, efficiently and expeditiously" and who might not remain in the bankruptcy field if they could be better compensated elsewhere. Otherwise, "the bankruptcy field would be occupied by those who could not find other work ... ." H.R.Rep. No. 595, 95th Cong., 1st Sess. 330, *reprinted at* 1978 *U.S.Code Cong. & Ad.News* 5963, 6286.

#### C.

Five courts of appeals have approved of computing attorney fees in bankruptcy cases by employing the tests used in public interest litigation. In *In re First Colonial Corp. of America,* 544 F.2d 1291 (5th Cir. 1977), the Fifth Circuit listed its twelve *Johnson* factors, and added two more for consideration in the bankruptcy context: efficiency of administration and avoidance of duplicative fees. The court concluded that "[a]lthough *Johnson* involved a suit brought under 42 U.S.C. § 2000e *et seq.,* the guidelines we established there are equally useful whenever the award of reasonable attorneys' fee is authorized by statute." *Id.* at 1299. *See also Boston & Maine Corp. v. Sheehan, Phinney, Bass & Green,* 778 F.2d 890, 896 (1st Cir.1985) ("[i]n the absence of prior agreement, using the lodestar ... conforms to professional expectations since litigation fees are quite often based on time charges"); *Harman v. Levin (In re Robertson),* 772 F.2d 1150, 1152–53 (4th Cir.1985) ("we agree ...

---

1. The twelve factors (the *Johnson* factors) are: (1) the time and labor required; (2) the novelty and difficulty of the issues; (3) the skill necessary to perform the services properly; (4) the preclusion of other employment; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation and ability of the applicant; (10) the "undesireability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. 488 F.2d at 717–719.

that the twelve-factor analysis of [*Johnson*] is appropriate to determine attorney's fee awards in bankruptcy"); *Mann v. McCombs (In re McCombs)*, 751 F.2d 286, 287–88 (8th Cir.1984) (affirmed district court use of twelve-factor test); *Yermakov v. Fitzsimmons (In re Yermakov)*, 718 F.2d 1465, 1471 (9th Cir.1983) (refers to *Johnson* as listing factors to be considered in awarding attorney fees). The Second Circuit has not yet ruled on this issue. *See Stable Mews Assoc. v. Togut (In re Stable Mews Assoc.)*, 778 F.2d 121, 124 n. 4 (2d Cir.1985).

### IV.

### A.

In *Blum v. Stenson*, 465 U.S. 886, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984), the Supreme Court reversed the award of a fifty percent upward adjustment of an attorney's fee in a case involving § 1988. The courts below had approved the fee enhancement on the basis of "the complexity of the litigation, the novelty of the issues, the high quality of representation, the 'great benefit' to the class, and the 'riskiness' of the law suit." *Id.* at 898, 104 S.Ct. at 1548. The Supreme Court rejected all of these arguments. It held that novelty and complexity of issues are reflected in the number of billable hours; special skill and expertise are reflected in the reasonableness of the hourly rate as generally is quality of representation; and results obtained is included in other factors used in calculating a reasonable fee and normally cannot provide an independent basis for increasing a fee award. *Id.* at 898–901, 104 S.Ct. at 1548–49. In view of the record in the case before it, the Court reserved the question of whether risk of nonpayment may justify an upward adjustment. *Id.* at 901 n. 17, 104 S.Ct. at 1550 n. 17. The Court stated that " 'quality of representation' ... may justify an upward adjustment only in the rare case where the fee applicant offers specific evidence to show that the quality of service rendered was superior to that one reasonably should expect in light of the hourly rates charged and that the success

was 'exceptional'." *Id.* at 899, 104 S.Ct. at 1549.

The Supreme Court ruling in *Blum v. Stenson* relies in part upon the legislative history of § 1988. That history, after stating that a reasonable attorney's fee is one that is "adequate to attract competent counsel, but ... [that does] not produce windfalls to attorneys", expressly approves of the twelve *Johnson* factors and cites cases which correctly applied them. S.Rep. No. 1011, 94th Cong., 2d Sess. 6, *reprinted at* 1976 *U.S.Code Cong. & Ad.News* 5908, 5913.

### B.

The legislative histories of § 1988 and § 330 express similar goals. Both are designed to compensate attorneys at the prevailing market rates for competent lawyers. The legislative history of § 1988 calls reasonable fee awards "an essential remedy if private citizens are to have a meaningful opportunity to vindicate [these] important Congressional policies", S.Rep. No. 94–1011 at 2, U.S.Code Cong. & Admin. News 1976, p. 5909. As noted on p. 5, U.S.Code Cong. & Admin.News 1976, p. 5912, *supra*, the House Report on § 330 speaks of allowing fees at the prevailing market rate to ensure that competent attorneys will remain in the bankruptcy field. Although the legislative history of § 330 contains no specific reference to the twelve *Johnson* factors, a significant number of those factors are included in the statute itself in contrast to § 1988, which refers only to a "reasonable attorney's fee".

### C.

I conclude that there are sufficient similarities between these two statutes that the limitations announced in *Blum v. Stenson* on awarding upward adjustment of fees under 42 U.S.C. § 1988 are applicable to such awards under § 330 of the Bankruptcy Code, with some possible modification for circumstances, not present here, which may be peculiar to bankruptcy

cases.[2] This conclusion is buttressed by the number of courts of appeals approving of the use of a lodestar figure and the *Johnson* factors in both civil rights cases and bankruptcy cases.

### V.

In view of the standards adopted herein, the record in this proceeding will not justify an upward adjustment of compensation to applicant. The applicant based its request on the novelty and difficulty of issues present; Needle's skill and professionalism in dealing with those issues; his responsibility for the substantial sums of money involved in the Kero-Sun reorganization; and the results achieved for unsecured creditors. The discussion in Section IV, *supra,* makes clear that under *Blum v. Stenson* none of these considerations provides a basis for an upward adjustment. All of these factors are included either in the number of hours that had to be spent by a senior member of the applicant's firm, or in the hourly rate that the court found to be reasonable. It is worth adding that Needle has been compensated at an hourly rate that is at the high end of the fee range for experienced attorneys in this district and in this court.

Applicant's request for an upward adjustment of fifteen percent of compensation previously awarded must be denied. It is

SO ORDERED.

---

**2.** The question of risk of nonpayment, left open in *Blum v. Stenson,* was answered in the affirmative in this Circuit, before *Blum v. Stenson,* in *City of Detroit v. Grinnell Corp.,* 495 F.2d 448, 471 (2d Cir.1974). Since *Blum v. Stenson,* this has been the prevailing view. *See Wildman v. Lerner Stores Corp.,* 771 F.2d 605, 611–14 (1st Cir.1985), and cases cited therein. While there is, of course, no requirement that counsel in a bankruptcy case "prevail" in order to be awarded fees, the contingency factor can be analogized to a case that starts with essentially no assets, and, therefore, with a real risk that administrative expenses will be unpaid. The risk of nonpayment argument was not advanced by applicant, and the Kero-Sun case did not involve any such risks.