In re Dale L. JOHNSON, and Elizabeth J. Johnson d/b/a Dale's Dairy, Debtors.

Bankruptcy No. 86–20718.

United States Bankruptcy Court,
D. Montana.

May 16, 1988.

See also, Bkrtcy., 92 B.R. 472.

Harold V. Dye, Missoula, Mont., for debtors.

Julio K. Morales, Missoula, Mont., for King.

Mark D. Lodine, Sp. Asst. U.S. Atty., Missoula, Mont., for FHA.

ORDER

JOHN L. PETERSON, Bankruptcy Judge.

At Butte in said District this 16th day of May, 1988.

In this Chapter 11 case, the Debtors have filed a Motion to Alter or Amend the Order of April 12, 1988, awarding an oversecured creditor, Jean L. King, the sum of $14,-500.00 in attorney fees under Section 506(b) of the Bankruptcy Code. The Order further directed that such sum be paid within 90 days from confirmation. The Debtors' motion places into issue the hourly rate effectively awarded and the term of payment. In response, King contends that an hourly rate plus other considerations are appropriate in fixing the fee and that the time of payment is consistent with Montana statutory law dealing with award of costs, i.e., Section 71–1–233, M.C.A.

The principal elements applied in award of attorney fees is hours times an hourly rate, which is known as the "lodestar" test. *Lindy Bros. Builders, Inc. v. Am. Radiator & Standard Sanitary Corp.*, 487 F.2d 161 (3rd Cir.1973) (*Lindy I*), and 540 F.2d 102 (3rd Cir.1976) (*Lindy II*).

Prior to lodestar, the predominant method of evaluation involved consideration of various factors of which the hourly rate was but one variable. *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–719 (5th Cir.1974), a Title VII matter, is the leading case in this area. It listed twelve factors, the first of which is the time and labor involved. The additional factors are (2) the novelty and difficulty of the problems, (3) the skill required to perform the legal services, (4) preclusion of other employment, (5) customary fees in the type of work involved, (6) whether the fee is fixed or contingent, (7) time limitations composed by the client or the circumstances, (8) the amount involved and the results obtained, (9) experience, reputation and ability of

counsel, (10) undesirability of the case, (11) nature and length of the professional relationship with the client, and (12) awards in similar cases.

Application of the above elements of variables can be difficult, as was articulated in *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986) (*Delaware I*), in which the Supreme Court stated:

> "This approach [*Johnson*] required trial courts to consider the elements that go into determining the propriety of legal fees and was intended to provide appellate courts with more substantial and objective records on which to review trial court determinations. This mode of analysis, however, was not without its shortcomings. Its major fault was that it gave very little actual guidance to District Courts. Setting attorney's fees by reference to a series of sometimes subjective factors placed unlimited discretion in trial judges and produced disparate results." *Id.* 478 U.S. at 563, 106 S.Ct. at 3097, 92 L.Ed.2d at 455.

Thus, lodestar has been employed with increasing frequency in recent years. In the Ninth Circuit, the transition is illustrated by *In re Yermakov*, 718 F.2d 1465 (9th Cir.1983), which, while alluding to the various criteria set forth in *Johnson,* stated "The primary method used to determine a reasonable attorney fee in a bankruptcy case is to multiply the number of hours expended by an hourly rate." *Id.* at 1471. As in *Yermakov,* criteria employed by courts in considering attorney fees in non-bankruptcy settings are now applied in bankruptcy cases. See *In re Baldwin–United Corp.*, 79 B.R. 321 (Bankr.S.D.Ohio 1987); *In re Kero–Sun, Inc.,* 59 B.R., 630, 633–634 (Bankr.D.Conn.1986); *In re Jensen–Farley Pictures, Inc.,* 47 B.R. 557 (Bankr.D.Utah 1985).

*Delaware I,* supra, considered the propriety of an attorney's fee award pursuant to Section 304(d) of the Clean Air Act [42 U.S.C. § 7604(d)], which provides that in any action to enforce the Act, the Court may award costs of litigation including a reasonable attorney's fee. The *Delaware I* Court stated:

> "[In *Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983) ], We ... adopted a hybrid approach that shared elements of both *Johnson* and the lodestar method of calculation ...
>
> We further refined our views in *Blum v. Stenson,* 465 U.S. 886 [104 S.Ct. 1541, 79 L.Ed.2d 891] (1984). *Blum* restated the proper first step in determining a reasonable attorney's fee is to multiply 'the number of hours reasonably expended on the litigation times a reasonable hourly rate' ...
>
> *Blum* also limited the factors which a district court may consider in determining whether to make adjustments to the lodestar amount. Expanding on our earlier finding in *Hensley* that many of the *Johnson* factors 'are subsumed within the initial calculation' of the lodestar, we specifically held in *Blum* that the 'novelty [and] complexity of the issues,' 'the special skill and experience of counsel,' the 'quality of representation,' and the 'result obtained' from the litigation are presumably fully reflected in the lodestar amount, and thus cannot serve as independent bases for increasing the basic fee award. Although upward adjustments of the lodestar figure are still permissible, such modifications are proper only in certain 'rare' and 'exceptional' cases, supported by both 'specific evidence' on the record and detailed findings by the lower courts.
>
> A strong presumption that the lodestar figure—the product of the reasonable hours times a reasonable rate—represents a 'reasonable' fee is wholly consistent with the rationale behind the usual fee shifting statute, including the one in the present case." *Id.* [478 U.S. at 564–65, 106 S.Ct. at 3098], 92 L.Ed.2d at 455–56.

In *Blum v. Stenson,* 465 U.S. 886, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984), the Court held that virtually all of the *Johnson* elements were subsumed into lodestar except for the factor of contingency. *In re Powerine Oil Co.,* 71 B.R. 767 (9th Cir. BAP 1986), decided prior to *Pennsylvania v.*

*Delaware Valley Citizens' Council for Clean Air,* 483 U.S. 711, 107 S.Ct. 3078, 97 L.Ed.2d 585 (1987) (*Delaware II*), affirmed allowance of a substantial increment to the lodestar figure because of a strong element of contingency, despite the absence of a contingent fee agreement as provided for by 11 U.S.C. § 328. In a bankruptcy setting this element can still be applicable, although there may now be reason to reexamine this issue because of *Delaware II.* This case, by a bare plurality (4 justices), may have folded the remaining unsubsumed element, that of contingency, into lodestar stating:

> "It may be that without the promise of risk enhancement some lawyers will decline to take cases; but we doubt that the bar in general will so often be unable to respond that the goal of the fee-shifting statutes will not be achieved. In any event, risk enhancement involves difficulties in administration and possible inequities to those who must pay attorney's fees; and in the absence of further legislative guidance, we conclude that multipliers or other enhancement of a reasonable lodestar fee to compensate for assuming the risk of loss is impermissible under the usual fee-shifting statutes." *Id.* [483 U.S. at 727, 107 S.Ct. at 3087], 97 L.Ed.2d at 599.

It should be noted, however, that taking into account the four justice dissent and Justice O'Connor's partial concurrence, it is arguable that the majority of the court has not as yet subsumed the element of contingency into lodestar. The dynamics of this problem are discussed in *Matter of Baldwin–United Corp.,* 79 B.R. 321, 344–346 (Bankr.S.D.Ohio 1987).

*Powerine* discussed the various Supreme Court cases then applicable, as well as *Chalmers v. City of Los Angeles,* 796 F.2d 1205 (9th Cir.1986), *modified and reh'g denied,* 808 F.2d 1373 (9th Cir.1987). *Chalmers,* following *Blum v. Stenson,* stated,

> "We begin with the Supreme Court admonition that if 'the claimed rate and

number of hours are reasonable, the resulting product is presumed to be the reasonable fee contemplated by section 1988.' The Supreme Court decision in *Blum* further holds that an upward adjustment of an award of fees by use of a multiplier is justified only in rare, exceptional circumstances." *Id.* at 1215.

Thus the Ninth Circuit clearly subscribes to lodestar. As stated above, this standard is applicable in bankruptcy.

As to the amount of the hourly rate, this Court in *Wendy's of Montana,* 111 B.R. 314, 5 Mont.B.R. 453 (Bankr.Mont.1988), adopted the use of the "locality" rule, after specifically noting that the burden of proof in all fee matters is on the applicant. *See, Mares v. Credit Bureau of Raton,* 801 F.2d 1197 (10th Cir.1986), (It remains counsel's burden to prove and establish the reasonableness of each dollar, each hour, above zero, and district courts are afforded wide latitude, within proper guidelines of fee-shifting statutes). In *Wendy's,* the Court, relying upon testimony of a competent bankruptcy practitioner, fixed the hourly rate at $110.00. The Court further awarded a bonus fee, again based on detailed evidence presented at the hearing on the fee application, due to the "difficulty, complexity, and relatively quick and successful completion of this Chapter 11 reorganization case,".[1]

In the case sub-judice, King filed a Proof of Claim for $76,154.13 as the principal amount due on the mortgage which is a first priority lien on real property valued at $110,000.00. King further requested an award of attorney's fees under Section 506(b) of the Code. King's objection to the Plan of Reorganization was rejected by the Court, and after confirmation, King's counsel filed an application for fees which relate to pre-petition and post-petition services. In the application, King's counsel urges the Court to adopt an element of contingency in the fee award based on a minimum fee schedule of the Western Montana Bar As-

---

**1.** I recognize that based on *Delaware II,* supra, a good argument could be made that the amount of the hourly rate fixed by the Court subsumes an award for bonus, but it is also very arguable that an element of contingency, i.e., bonus, is proper under *Powerine,* supra.

sociation dealing with mortgage foreclosure actions. The percentage allocation increases the fee request by $3,430.00. The hourly rate is fixed at $80.00 to $90.00 per hour, which is a reasonable per hour charge. King here paid the hourly charges of $9,556.10, leaving a balance due of $336.00. The total hourly based fee is $9,892.10, and costs advanced equal $448.60. The Court awarded a fee of $14,500.00, which the Debtors contend raises the hourly rate to over $140.00 per hour, being in excess of any reasonable hourly rate submitted by King's counsel. It appears from the record that King's claim was never at risk, since there was at all times a sufficient equity cushion in the property to pay the principal, interest and costs of foreclosure.

Upon reconsideration, I conclude none of the element of risk or contingency discussed in *Powerine Oil,* supra, is present in this case and King's counsel has proven that the hours expended of about 121.5 hours should be paid at $80.00 to $90.00 per hour. In light of the above legal authorities, I fix a reasonable fee based only on an hourly rate at $10,325.00 plus costs advanced of $448.60.

■ The Debtor further complains that the payment of the fees cannot be ordered to be paid within 90 days of confirmation, but rather such fee is added to the claim and reamortized over 20 years at 8.5% interest. Contrary to King's argument, § 506(b) has pre-empted state law governing the availability of attorney's fees as part of a secured claim. *Matter of 268 Ltd,* 789 F.2d 674, 675 (9th Cir.1986). 3 *Collier on Bankruptcy,* ¶ 506.05, pp. 506–41 and 42 (15th Ed.), notes:

> "It is important to recognize that section 506(b) provides only for the *allowance* of post-petition interest, fees, costs and charges as part of a secured claim. It does not require the current *payment* of such amounts. Entitlement to current payment of such amounts must be grounded elsewhere, such as in the provision of adequate protection or in underlying agreements which are not affected by the subject bankruptcy case."

Thus, we have a critical distinction, that as to the award of a reasonable fee, state law does not govern, but as to the payment of the fee, state law or the mortgage agreement may control. In this case, the mortgage agreement provides that attorney's fee shall be allowed upon default and be a "lien under this indenture". Clearly, the mortgage foreclosure provisions are at odds with § 1129 of the Code. In the confirmed Plan, King's claim is fixed without regard to the allowance and payment of attorney's fees, and only the principal and interest are to be amortized over 20 years. The Plan provides that administrative expenses, i.e., any payment for services or costs and expenses in connection with the case, or incident to the case is subject to the approval of the Court as reasonable, and administrative claims will be paid cash equal to the amount of the claim. Thus, I conclude the Plan contemplated payment of King's allowance of attorney fees in cash, not in deferred cash payments over 20 years.

IT IS ORDERED the motion to amend the award of attorney fees for secured creditor Jean L. King is granted and the fee is set at $10,325.00 plus costs advanced of $448.60, to be paid within 90 days of this Order.

