735 F.2d 113
 Theresa BURNEY, Sileatha Ferguson, Brenda Jackson, Debra
Turner, Rose Ann Johnson and Stacey Glover, individually and
on behalf of all others similarly situated. Arlene Goosby,
Gia Flannigan, Joann Powell and Leila Smith
v.
HOUSING AUTHORITY OF the COUNTY OF BEAVER, James F. Tress,
individually and in his capacity as Executive Director of
the Housing Authority of the County of Beaver, John F.
Phillips, individually and as Chairman of the Board of
Commissioners of the Housing Authority of the County of
Beaver, their agents, successors in office, and persons
acting under their direction
Homer C. Floyd, Executive Director for Pennsylvania Human
Relations Commission, Defendant Intervenor.
Leila SMITH, Gia Flannigan, Joann Powell and Arlene Goosby,
individually and on behalf of all others similarly situated
v.
HOUSING AUTHORITY OF the COUNTY OF BEAVER, and James F.
Tress, individually and in his capacity as Executive
Director of the Housing Authority of the County of Beaver,
and John F. Phillips, individually and as Chairman of the
Board of Commissioners of the Housing Authority of the
County of Beaver and their agents, successors in office and
persons acting under their direction.
Appeal of Theresa BURNEY, Sileatha Ferguson, Brenda Jackson,
Debra Turner, Rose Ann Johnson, and Stacey Glover,
individually and on behalf of all others similarly situated.
Arlene Goosby, Gia Flannigan, Joann Powell and Leila Smith,
in No. 83-5246.
Appeal of Homer C. FLOYD, Executive Director of the
Pennsylvania Human Relations Commission, in No. 83-5262.
 Nos. 83-5246, 83-5262.
 United States Court of Appeals,
Third Circuit.
 Argued March 2, 1984.
Decided June 1, 1984.
As Amended June 6, 1984.
 
 Timothy P. O'Brien (argued), Neighborhood Legal Services Ass'n, Pittsburgh, Pa., for appellants, Theresa Burney et al.
 Clarence D. Neish (argued), Aliquippa, Pa., for appellees, Housing Authority of the County of Beaver et al.
 Michael L. Foreman (argued), Pennsylvania Human Relations Com'n, Pittsburgh, Pa., for defendant intervenor, Homer C. Floyd, Executive Director of the Pennsylvania Human Relations Com'n.
 Before ADAMS and SLOVITER, Circuit Judges, and KELLY, District Judge.*
 OPINION OF THE COURT
 SLOVITER, Circuit Judge.
 
 
 1
 Plaintiffs in the court below appeal in No. 83-5246 from the district court's order setting their counsel fees. Defendant-Intervenor, Homer C. Floyd, Executive Director of the Pennsylvania Human Relations Commission (PHRC), filed a cross-appeal in No. 83-5262 from the award of any attorney's fees against it. Following the argument, we ordered this matter held until the Supreme Court's decision in Blum v. Stenson, then pending. After that decision was announced, --- U.S. ----, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984), we gave the parties the opportunity to comment thereon. In No. 83-5262, we will affirm the district court's order. In No. 83-5246, we will remand to the district court for reconsideration in light of Blum v. Stenson.
 
 I.
 Facts and Procedural History
 
 2
 This action was filed by plaintiffs in October 1978 as a class action against the Beaver County Housing Authority (Housing Authority). Plaintiffs, who were represented by Neighborhood Legal Services (NLS), contended that the Housing Authority was violating Title VIII of the Civil Rights Act of 1968 and the Fourteenth Amendment by maintaining an admission policy that limited the number of black occupants in the Housing Authority projects. The Housing Authority's policy had resulted from a consent order between it and the PHRC entered in October 1975 that resolved a formal complaint filed before the PHRC charging the Housing Authority with having unlawfully segregated its tenants by race. Since the present action in effect challenged the constitutionality of at least some of the provisions of that decree, the PHRC requested and was permitted to intervene in this suit as a matter of right; Homer C. Floyd, Executive Director of the PHRC, was substituted for it as defendant-intervenor. During the proceedings in the district court, the PHRC expressed its willingness to conform the consent decree between it and the Housing Authority to constitutional standards.
 
 
 3
 Following several years of discovery, and a six-day non-jury trial, the district court declared the Housing Authority's admission policies violated the Fourteenth Amendment and Title VIII. Burney v. Housing Authority, 551 F.Supp. 746 (W.D.Pa.1982). Plaintiffs then submitted a motion for attorney's fees, and the district court awarded NLS attorney's fees and costs of $26,956.90. Plaintiffs had sought a lodestar amount of $48,480, based on 518.25 hours at $90 an hour for lead counsel and $65 an hour for assistant counsel. Plaintiffs also requested that this amount be multiplied by three because of the contingent nature of success, the complexity of the constitutional issues involved, and the quality of litigation. The total amount requested for fees and costs was $147,796.90.
 
 
 4
 The district court found that the number of hours expended by counsel was reasonable, but instead of awarding fees based on the requested rates awarded $50 an hour for lead counsel and $35 an hour for assistant counsel, with an increase to $60 for lead counsel for the last year involved. The court also refused the request to multiply the lodestar amount. The district court based its award of the hourly rate on that awarded NLS in an earlier case before that court, Inmates of the Allegheny County Jail v. Peirce. The court divided the costs and attorney's fees between the Housing Authority and the PHRC, 75% and 25% respectively.
 
 
 5
 On appeal, plaintiffs argue that the district court applied an incorrect legal standard in arriving at the hourly rate applied to their request for attorney's fees. They contend that the court's failure to consider the actual market value of such services was error. They also contend that the court abused its discretion in failing to grant an addition to the lodestar amount. In its cross-appeal, the PHRC contends that the district court erred as a matter of law in awarding any fees against it. The PHRC maintains that it in no way caused or protracted this litigation or caused harm to the plaintiff during it. In addition, the Housing Authority attacks the judgment, but without cross-appealing, on the ground that plaintiff did not succeed on all claims asserted.
 
 II.
 
 6
 Plaintiffs' Appeal--Hourly Rates and Lodestar
 
 
 7
 In Blum v. Stenson, supra, decided after the district court's decision in this case, the Supreme Court elucidated the principles to guide the federal courts in awarding a reasonable attorney's fee under 42 U.S.C. Sec. 1988 when plaintiffs are represented by non-profit legal services organizations, as in this case. The Court rejected the arguments of the state-entity defendant that fees in such instances should be calculated according to the cost of providing legal services rather than according to the prevailing market rate. The Court, after reviewing the statute and legislative history, determined instead that " 'reasonable fees' under Sec. 1988 are to be calculated according to the prevailing market rates in the relevant community, regardless of whether plaintiff is represented by private or non-profit counsel." --- U.S. at ----, 104 S.Ct. at 1547.
 
 
 8
 It is evident that the district court here made no findings as to the prevailing market rates. Instead it explicitly determined the hourly rate by reference to fees awarded to NLS in another case.[1] There is no indication that those fees were based on market rate. Plaintiffs contend that NLS sought a below market hourly rate in the County Jail case for extraneous reasons. In fact, in the opinion there awarding a $50 per hour fee, the court recognized that plaintiff's witness testified the amount claimed "was less than his law firm would have charged for an attorney with Mr. Krakoff's experience during the years in question, and he felt this would likewise be true of other private law firms in the Pittsburgh area." No. 76-743, slip op. at 12 (W.D.Pa. Sept. 28, 1982), reprinted in Addendum to Brief for Appellants at 32, vacated and remanded, 716 F.2d 177 (3d Cir.1983). Therefore, we must remand this matter to the district court for reconsideration of the fees in a manner consistent with the Supreme Court's decision in Blum v. Stenson.
 
 
 9
 Plaintiffs also argue that the district court erred in refusing to increase the lodestar even though the case involved complex constitutional issues and plaintiffs' probability of success at the time of filing was doubtful. In Danny Kresky Enterprises Corp. v. Magid, 716 F.2d 215, 219 (3d Cir.1983), we reiterated that the decision to increase the lodestar is a matter within the discretion of the district court. In Blum v. Stenson, the Supreme Court recognized that there may be cases in which "enhancement [is] necessary to provide fair and reasonable compensation." --- U.S. at ----, 104 S.Ct. at 1550. The Court believed that the complexity and novelty of the issues presented (factors on which NLS relied in part in its request for enhancement) will be reflected in the number of billable hours recorded by counsel and would not warrant an upward adjustment in the fee when the fee is based on the number of billable hours times reasonable hourly rates. Id. at ----, 104 S.Ct. at 1548. We see no legal error in the district court's refusal to enhance the fee by increasing the lodestar. However, since we must remand this matter to the district court for reconsideration, and NLS did not have the benefit of the Court's most recent statement as to the applicable legal principles, the district court may choose to give the plaintiffs an additional opportunity to "carry their burden of justifying entitlement to an upward adjustment," in the manner referred to by the Court in Blum v. Stenson. Id. at ----, 104 S.Ct. at 1549.III.
 
 Cross-Appeal of PHRC
 
 10
 The PHRC argues that the district court's award of attorney's fees against it, albeit only on a 25% basis, was unsupported by the record, inequitable and unauthorized under section 1988, because PHRC was merely an intervenor and its actions did not increase plaintiffs' litigation burden, protract the litigation, or obstruct plaintiffs from obtaining just relief. The district court found that the PHRC occupied a position "somewhere between the plaintiffs and the defendants;" that since the PHRC was willing to abolish the consent decree plan, and worked to abolish it, PHRC "acted on behalf of the plaintiff"; and that it "cannot be argued that PHRC protracted this litigation or caused additional harm to the plaintiffs." App. at 151a-152a. The court found, nevertheless, that the PHRC "helped to create the plan and signed [the] decree"--without which "there would have been no lawsuit." App. at 151a. Accordingly, the court declined to assess the entire award against the PHRC, as the Housing Authority requested, but determined that 25% was equitable under the circumstances.
 
 
 11
 In Consumers Union of United States, Inc. v. Virginia State Bar, 688 F.2d 218 (4th Cir.1982), cert. denied, --- U.S. ----, 103 S.Ct. 3124, 77 L.Ed.2d 1375 (1983), the court affirmed the imposition of attorney's fees against the Supreme Court of Virginia for its direct role in enforcing the unconstitutional rule prohibiting attorney advertisement, and held that the district court should also have awarded fees against the Virginia State Bar by reason of the Bar's enforcement role.
 
 
 12
 In making its apportionment decision here, the district court focused on the role played by the PHRC and its participation in fashioning the consent decree that contained the unconstitutional and unlawful provisions giving rise to this lawsuit. This is not dissimilar to that played by the Court and the Bar in the Consumers Union case, which the Fourth Circuit held justified imposition of fees against them.
 
 
 13
 It is, of course, true that had the PHRC not intervened, there would have been no basis for imposition of a fee against it. It chose to intervene voluntarily in this lawsuit, however, and thereby vested the district court with the authority to award fees to the prevailing plaintiffs against it. We find no basis to hold that the district court abused its discretion in that regard.
 
 
 14
 The Housing Authority argues that the plaintiffs did not prevail on all their claims or achieve a level of success against it that makes the hours expended a satisfactory basis for the fee award. These claims have not been made by the PHRC, the only defendant who filed a cross-appeal. Therefore, since the Housing Authority did not raise these issues by way of cross-appeal, they are not properly before us, and cannot be considered. See David v. City of Scranton, 633 F.2d 676, 677 n. 1 (3d Cir.1980); Fain v. Caddo Parish Police Jury, 564 F.2d 707, 709 n. 3 (5th Cir.1977).
 
 IV.
 Conclusion
 
 15
 For the foregoing reasons, we will affirm the district court's order in No. 83-5262; we will vacate the district court's order in No. 83-5246 and remand for further proceedings.
 
 
 
 *
 Hon. James McGirr Kelly, United States District Judge for the Eastern District of Pennsylvania, sitting by designation
 
 
 [1]
 The court stated:
 NLS in Pittsburgh did an outstanding job in representing the Inmates of the Allegheny County Jail from 1976 through 1981, conducted a trial that lasted six weeks and also participated in numerous other hearings and an appeal to the United States Court of Appeals for the Third Circuit....
 In that case we awarded fees of $50 per hour to lead counsel. See unpublished opinion Inmates of the Allegheny County Jail et al. v. Peirce et al., C.A. 76-743 (W.D.Pa.1982) (on appeal to the Third Circuit, Allegheny County being the appellant.)
 Consistent with our ruling in that case, we will here award fees of $50 per hour for lead counsel and $35 per hour for associate counsel for the period 1977-1981 and $60 per hour for lead counsel for 1982 to account for inflation. There is no claim for associate counsel in 1982.
 App. at R. 148a.