**STUDENT PUBLIC INTEREST RE-SEARCH GROUP OF NEW JERSEY, INC., et al., Plaintiffs,**

v.

**AT & T BELL LABORATORIES, Defendant.**

Civ. A. No. 84–1087.

United States District Court, D. New Jersey.

Sept. 10, 1986.

As Amended Oct. 6, 1986.

Terris, Edgecombe, Hecker & Wayne, by Karen H. Edgecombe, Carolyn Smith Pravlik, Washington, D.C., and Gordon & Gordon by Michael Gordon, West Orange, N.J., for plaintiffs.

Donovan, Leisure, Newton & Irvine by Steven A. Tasher, Washington, D.C., and American Telephone & Telegraph by John A. McKinney, Jr., Berkeley Heights, N.J., for defendant.

## OPINION

STERN, District Judge.

This matter comes before the court on an application for attorney's fees and expenses brought by plaintiffs. On Aug. 13, 1985, this court entered an order granting partial summary judgment in favor of plaintiffs on the issue of liability. The opinion is reported at 617 F.Supp. 1190 (D.N.J.1985). The parties subsequently settled their disputes except for the issue of attorney's fees and expenses. The underlying factual circumstances and legal claims are discussed in this court's previous opinion.

Attorney's fees should be awarded in this case. Defendant does not dispute this. The Federal Water Pollution Control Act (FWPCA) contains its own attorney's fees provision, 33 U.S.C. § 1365(d) (1985), which the Supreme Court has interpreted to make a party eligible for an award when that party has achieved "some degree of success on the merits." *Ruckelshaus v. Sierra Club*, 463 U.S. 680, 694, 103 S.Ct. 3274, 3282, 77 L.Ed.2d 938 (1983). In the present case, plaintiffs achieved total success on the issue of liability and settled on terms that required defendant to pay $75,000 in civil penalties to the U.S. Treasury. Therefore, the only disputes before the court in the present case have to do with how much the award should be.

*The Lodestar*

The main dispute has to do with calculation of the lodestar, "the number of hours reasonably expended multiplied by a reasonable hourly rate." *Lindy Brothers Builders, Inc. v. American Radiator & Standard Sanitary Corp.*, 487 F.2d 161, 167 (3d Cir.1973) (*Lindy I*); *see Blum v. Stenson*, 465 U.S. 886, 888, 104 S.Ct. 1541, 1543, 79 L.Ed.2d 891 (1984).

Plaintiffs' firm, Terris & Sunderland,[1] proposes that in calculating the lodestar, this court should use the market rate for attorneys of comparable experience in the same city. Plaintiffs undertook to establish the market rate in Washington, D.C., through affidavits, and plaintiffs also submitted a list of their attorneys broken down by years of experience, corresponding hourly rate and total hours spent on this case.

Defendant contends we should instead use Terris & Sunderland's normal billing rate to calculate the lodestar. There appears to be no dispute over the fact that Terris & Sunderland's normal billing rates are only approximately one third to one half of the market rates in Washington, D.C. The firm is a for-profit one but engaged exclusively in public interest work. Attorneys who work for Terris & Sunderland are well-credentialed and could doubtless command market rates were it not for the type of case the firm specializes in. Terris & Sunderland takes clients who cannot pay very much.

Terris & Sunderland charges this "normal billing rate" in Title VII cases but represents to this court that its contracts with Title VII clients contain a provision that the firm may forgo payment by the client in favor of seeking attorney's fees. In the present case, however, and in approximately two dozen similar cases that Terris & Sunderland has brought under the FWPCA, the firm has no fee arrangement with its client, and the entire possibility of recovery depends upon the possibility of an attorney's fee award.

The attorney's fees provision of the FWPCA, 33 U.S.C. § 1365(d), is a fee-shifting statute but this does not mean that the award available to Terris & Sunderland is restricted to the fee it had agreed upon with its client—in this case nothing. The Supreme Court has recently made this clear in a general statement about the similar attorney's fees provisions in numerous statutes:

> These statutes were not designed as a form of economic relief to improve the financial lot of attorneys, *nor were they intended to replicate exactly the fee an*

---

1. Plaintiffs' firm changed its name to Terris, Edgecombe, Hecker & Wayne after the present motion was filed. We will use the old name in this opinion.

*attorney could earn through a private fee arrangement with his client.* Instead, the aim of such statutes was to enable private parties to obtain legal help in seeking redress for injuries resulting from the actual or threatened violation of specific federal laws. Hence, if plaintiffs, such as Delaware Valley, find it possible to engage a lawyer based on the statutory assurance that he will be paid a "reasonable fee," the purpose behind the fee-shifting statute has been satisfied.

*Pennsylvania v. Delaware Valley Citizens' Council for Clear Air,* ── U.S. ──, 106 S.Ct. 3088, 3098, 92 L.Ed.2d 439 (1986) (emphasis added). *Delaware Valley* was a Clean Air Act case.[2] The purpose of the FWPCA fee-shifting statute is similarly satisfied where, as in the present case, plaintiffs were able to "engage a lawyer based on the statutory assurance that he will be paid a 'reasonable fee.' "

This leaves us with the problem of whether the "reasonable fee" is based on normal billing rates or market rates. Defendant relies on the following language.

> When the costs of litigating attorneys fees are unavoidable, and they may be when firms with no relevant billing histories are involved, they must be tolerated. But when fixed market rates already exist, there is no good reason to tolerate the substantial costs of turning every attorneys fee case into a major ratemaking proceeding. *In almost every case, the firms' established billing rates will provide fair compensation.* The established rates represent the opportunity cost of what the firm turned away in order to take the litigation; they represent the lawyers' own assessment of the value of their time.

*Laffey v. Northwest Airlines, Inc.,* 746 F.2d 4, 24 (D.C.Cir.1984), *cert. denied,* ── U.S. ──, 105 S.Ct. 3488, 87 L.Ed.2d 622 (1985) (emphasis in original). With this language, the D.C. Circuit Court of Appeals creates a strong presumption in favor of using normal billing rates. It is nevertheless clear from this same passage that "fixed market rates" are the standard, and normal billing rates are usually reliable evidence of market rates. The D.C. Circuit Court of Appeals does not regard normal billing rates as *always* reliable evidence of market rates. *See id.* at 15 n. 69 ("an attorney's customary billing rate is *presumptively* his reasonable hourly rate" (emphasis added)). The *Laffey* court sees an exception to the reliability of normal billing rates where the lawyers are not "in customary private practice." *Id.* at 18. *See also id.* (". . . somewhat different situation is presented when the attorney does not have a customary hourly rate set by the competitive market place.") (quoting Berger, *Court Awarded Attorneys' Fees: What is Rasonable?",* 126 U.Pa.L.Rev. 281, 322 (1977)). The *Laffey* court also required courts awarding attorney's fees to establish that the firm's normal billing rates fall within the general range of rates "charged by other firm for similar work in the same community." *Id.* at 24–25. Only if the normal billing rates fall within the general range are they to be considered "the market rate for the purposes of calculating the lodestar." *Id.* at 25.

■ We hold that in the present case Terris & Sunderland falls within the exception defined by *Laffey.* Terris & Sunderland is not "in customary private practice," *id.* at 18, because its undisputed affidavits demonstrate that it engages uniformly in "public interest law" and uniformly charges its clients rates drastically lower than the market rate or no fee at all, and has no fee arrangement at all with clients in FWPCA cases.

In recognizing exceptions to the rule that normal billing rates are indicative of market rates, the *Laffey* opinion is consistent with the leading Third Circuit cases. *See*

---

**2.** The Delaware Valley Citizens Council sought attorney's fees under the attorney's fees provision of the Clean Air Act, 42 U.S.C. § 7604(d) (1985), which is identical to the provision in the FWPCA. Some sixteen federal statutes contain the same provision. *Ruckelshaus v. Sierra Club,* 463 U.S. at 682, n. 1, 103 S.Ct. at 3276, n. 1. In the quoted passage, the Court refers to these fee-shifting provisions generally.

*Cunningham v. City of McKeesport,* 753 F.2d 262, 267 (3d Cir.1985) (" ... the reasonable value of an attorney's time is the price that time *normally* commands in the market place ...") (emphasis added); *In Re Fine Paper Antitrust Litigation,* 751 F.2d 562, 590 (3d Cir.1984) (same); *Lindy I,* 487 F.2d at 167 ("The value of an attorney's time *generally* is reflected in his normal billing rate.") (emphasis added).

*Laffey* is also consistent with the rule of *Blum,* where the Supreme Court granted an application based on the attorney's fees provision of the Civil Rights Act, 42 U.S.C. § 1988:

> The statute and legislative history establish that "reasonable fees" under § 1988 are to be calculated according to the prevailing market rates in the relevant community, *regardless of whether plaintiff is represented by private or nonprofit counsel.* The policy arguments advanced in favor of a cost-based standard should be addressed to Congress rather than to this Court.

*Blum,* 104 S.Ct. at 1547 (emphasis added). The Court went on to illustrate what an attorney must do to show the market rate:

> In seeking some basis for a standard, courts properly have required prevailing attorneys to justify the reasonableness of the requested rate or rates. To inform and assist the court in the exercise of its discretion, the burden is on the fee applicant to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation. A rate determined in this way is normally deemed to be reasonable, and is referred to—for convenience—as the prevailing market rate.

*Id.* at 1547, n. 11. In *Blum* the attorney's fees were sought by a nonprofit legal services organization, but the court made it clear that market rates applied "regardless of whether plaintiff is represented by private or nonprofit counsel," because "Congress did not intend the calculation of fee

awards to vary depending on [this factor]." *Id.* at 1547.

■ The Third Circuit has ruled generally that all the jurisprudence regarding the calculation of reasonable attorney's fees, including calculation of the lodestar, under § 1988 applies equally to the Clean Air Act. *Delaware Valley Citizens' Council v. Pennsylvania,* 762 F.2d 272, 275 (3d Cir. 1985), *aff'd in part and rev'd in part on other grounds,* —— U.S. ——, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986). If *Blum* applies to the Clean Air Act, then it should be applied equally to the identical provision in the FWPCA. *See Ruckelshaus v. Sierra Club,* 463 U.S. at 682–83, n. 1, 693–94, 103 S.Ct. at 3276–77, n. 1, 3282 (construction of word "appropriate" in attorney's fees provision of Clean Air Act applies to sixteen federal statutes with identical provision). Therefore, market rates apply to attorney's fees lodestar calculations under the FWPCA, regardless of whether the applicant is represented by private or nonprofit counsel. Although the correctness of awarding market rate fees to a for-profit firm that charged its client nothing was not the question before the Court, the Supreme Court has affirmed such an award made by a district court and affirmed by the Ninth Circuit. *City of Riverside v. Rivera,* —— U.S. ——, 106 S.Ct. 2686, 2696, 91 L.Ed.2d 466 (1986).

■ We hold that the number of hours claimed by Terris & Sunderland and the hourly rates based on market rates in Washington, D.C., are both reasonable. Any other result would grant the defendant here a fortuity. The fact that the plaintiff chose a firm which makes financial sacrifices in the public interest should not result in a windfall for the defendant.

*Upward Adjustments*

Terris & Sunderland request upward adjustments based both on the quality of the firm's work and the contingency of success. The work done by both side's attorneys in this case was excellent. The Supreme Court has, however, recently reiterated that upward adjustments based on

the quality of representation are rarely justified because of the strong presumption that the lodestar is a reasonable fee. *Delaware Valley*, 106 S.Ct. at 3097; *Blum*, 465 U.S. at 898–901, 104 S.Ct. at 1548–50. Accordingly no such adjustment will be awarded.

The Supreme Court has postponed until further argument consideration of upward adjustment of the lodestar based on contingency. *Delaware Valley*, 106 S.Ct. at 3099. Our determination of this issue is therefore guided by the factors set forth in *Lindy Brothers Builders, Inc. v. American Radiator*, 540 F.2d 102, 117 (3d Cir. 1976) (*Lindy II*). As evidenced by the fact that this court determined the liability issue on summary judgment, this court does not believe that much doubt surrounded the question. Nor do the risks assumed in developing the case seem great. For these reasons, no upward adjustments based on contingency will be awarded.

*Expenses*

Terris & Sunderland's list of expenses, copying, telephone, etc., appears reasonable. Terris & Sunderland's request for compensation for work performed by the Trial Lawyers for Public Justice also appears reasonable.

*Fees for Seeking Attorney's Fees*

The lodestar in Terris & Sunderland's application for attorney's fees also appears reasonable.

An order accompanies this opinion.

### ORDER

This mater comes before the court on a motion for attorney's fees brought by plaintiffs, and for reasons presented in the accompanying opinion,

IT IS on this 10 day of September, 1986

ORDERED that the attorneys for the parties will attempt to agree on a joint stipulation on attorney's fees for work performed by plaintiffs attorneys Michael Gordon, Esquire and Kathleen Butler, Esquire, pursuant to the rulings in this court's opinion of September 10, 1986, and file the stipulation with this court within thirty days of the date of this order; and it is further,

ORDERED that if the parties cannot agree on a joint stipulation, plaintiffs will file an affidavit presenting their proposed award within thirty days of the date of this order, and the defendant will file an affidavit presenting its proposed award within forty-five days of the date of this order, and the dispute will be referred to U.S. Magistrate Ronald J. Hedges.