Forest Henry SHIPES, et al., Plaintiffs,

v.

**TRINITY INDUSTRIES, INC., Defendant.**

**Civ. A. No. TY–80–462–CA.**

United States District Court, E.D. Texas, Tyler Division.

Dec. 7, 1987.

---

Larry R. Daves, Daves & McCabe, Tyler, Tex., Nell Hahn, Austin, Tex., for plaintiffs.

Robert E. Rader, Jr., George A. Harper, Ennis, Tex., for defendant.

## ORDER

JUSTICE, Chief Judge.

On July 15, 1987, this court ordered that the defendant pay plaintiffs' counsel $144,-712.70 as partial interim attorney's fees. That sum represented the lodestar payment to which plaintiffs' attorneys, Nell Hahn, Esquire, and Martha Owen, Esquire, were entitled. In the July 15 order, additional findings were made respecting the character of the litigation and the nature of plaintiffs' representation. These findings answered the desiderata, set forth in *Johnson v. Georgia Highway Express*, 488 F.2d 714, 717–19 (5th Cir.1974), and largely adopted by the U.S. Supreme Court in *Blum v. Stenson*, 465 U.S. 886, 893, 104 S.Ct. 1541, 1546, 79 L.Ed.2d 891 (1984), for the compu-

tation of enhancements or multipliers to an attorney's lodestar fee.

However, the July 15 order did not give these additional factors a monetary value. Instead, resolution of that issue was deferred until the impact of last term's Supreme Court decision in *Pennsylvania v. Delaware Valley Citizens' Council*, — U.S. —, 107 S.Ct. 3078, 97 L.Ed.2d 585 (1987), could be briefed and considered. In *Delaware Valley*, a divided court held that it was improper to enhance a lodestar fee in order to compensate for a prevailing attorney's risk of losing the case and not being paid. Accordingly, before the court for consideration here is whether plaintiffs' counsel are entitled to upward adjustment of their lodestar in the wake of the *Delaware Valley* decision.

In the July 15 order, this court found that various *Johnson* factors existed. The case was novel and difficult (the second *Johnson* factor). At least some of this difficulty was aggravated by the defendant's obstinate conduct in the course of pretrial discovery. Litigation of the merits required more than usual skill (the third *Johnson* factor), because it involved the analysis and presentation of highly technical information and data. Attorney Hahn had to devote a substantial portion of her time on this matter, to the preclusion of other employment (the fourth *Johnson* factor). In part due to defendant's discovery tactics, plaintiffs' counsel were forced to work under torturous time constraints with an enormous amount of undigested discovery material (the seventh *Johnson* factor), and nevertheless were able to secure an impressive victory on behalf of their clients. This outcome benefits a large number of claimants, whose relief could be worth more than $1,000,-000.00. Thus, the outcome of the case (the eighth *Johnson* factor) was significant. All of these factors support an upward adjustment of the lodestar.[1]

The order also discussed the sixth *Johnson* factor, consisting of the related issues

[1]. In the July 15 order, it was also found that two *Johnson* factors—the undesirability of the case (factor ten), and the nature and length of the professional relationship with the client (factor eleven)—played no role in this litigation.

of whether the fee was fixed or contingent, and the risk of nonpayment. It was found that Hahn and Owen, by their commitment to the plaintiffs' cause, had significantly exposed themselves to the possibility of nonpayment. These risks went beyond what normally is associated with the contingency fee arrangement. In particular, counsel's inability to obtain the necessary statistical discovery material until the eleventh hour narrowed the tightrope that they walked to a razor's edge. It was observed, however, that Hahn took far more of a gamble in this respect than Owen.

Here, the court must gauge the impact of the *Delaware Valley* decision on these *Johnson* factors. It is best first to list the *Johnson* factors that *Delaware Valley* does not affect at all. It has no impact on the upward adjustment of fees because of delay, or because of difficulties posed by defendants' conduct. 107 S.Ct. 3081-82. Nor does the decision affect adjustments made due to the unpopularity of the cause.[2] *Id.* at 3082. Also, the extent to which courts may consider the importance of the outcome is not changed by *Delaware Valley*.

Instead, the Supreme Court's *Delaware Valley* holding is explicitly quite narrow, and somewhat technical. It deals only with one *Johnson* factor: the contingency of the fee, or in other words, the risk of nonpayment. While the four-judge plurality opinion stated that fee-shifting statutes *per se* do not permit the adjustment of lodestars for an attorney's assumption of the risk of nonpayment, *id.* 3081-89, the outcome of the case was determined by the added single concurrence of Justice O'Connor, who disagreed with this view. *Id.* at 3089-90. Instead, her opinion held only that the risk enhancement that had been awarded by the lower court in that particular case was unwarranted. *Id.* at 3090-91.[3] It is significant that the four-justice plurality opinion states as an alternative holding that, if the fee statutes permit risk enhancement, it

nonetheless was inappropriate to award it in the circumstances of the *Delaware Valley* case. *Id.* at 3087-89. Because Justice O'Connor concurs only with this alternative aspect of the plurality opinion, her opinion constitutes the holding of the Supreme Court. Thus, it is appropriate to parse it out by a close reading.

Justice O'Connor's opinion describes three criteria for evaluating a prevailing attorney's risk of nonpayment, and attaching a value to it. The first criterion is the parameter of the legal marketplace. *Id.* at 3090. There should be some "consistency" in adjustments for contingency. The courts should avoid "[h]aphazard and wildly divergent compensation for risk." *Id.* Contingency cases should be treated "as a class." The court must standardize its findings from case to case, based on "how a particular market compensates for contingency." *Id.* Thus, risk enhancement decisions should not be made on an *ad hoc* basis; instead, because these decisions posit a similar market, a fee decision in one case should control future cases as well.

Second, the fee applicant has the burden of showing how a market compensates for contingency. *Id.* at 3090-91. Within the attorney's market, compensation for risk is inappropriate unless the prevailing party otherwise "would have faced substantial difficulties in finding counsel." *Id.* at 3091, *quoting* plurality opinion at 3089. Thus, the prevailing party must show the existence, extent, and value of these difficulties in the relevant market.

Third, the court's assessment of a risk enhancement should not take into account the normal "legal" risks, or even the unique risks, associated with a particular case. Theoretically, such risks are already reflected in the lodestar, which is a function of the professional skills and time required to obtain a favorable result. According to the Supreme Court majority, an additional bonus for case-specific risk is inappropriate. *Id.* at 3091.

---

2. In any event, as noted above, the unpopularity of the cause is a consideration irrelevant to the value of Hahn's and Owen's work in this action.

3. The four-justice dissent would hold both that fee statutes permit risk enhancements, and that they were warranted in the case before the Supreme Court. *Id.* at 3091-3102.

Accordingly, the gravamen of the *Delaware Valley* case is that lower courts are not permitted to peg contingency enhancements solely to the particular case for which an award is sought. Instead, the particular case must be looked at as part of a class of similar cases, and the permissible award for contingency is to be viewed as something between what the market requires and what it will bear. The risk enhancement award must not be less or more than what is necessary to countervail the difficulties the prevailing party otherwise would have faced in finding counsel within the relevant market.

▆▆▆ Thus, should plaintiffs' attorneys wish to press their claim for additional upward adjustment of the lodestar, based on the single factor of contingency, *Delaware Valley* compels the court to order the submission of additional evidence on the risk or contingency characteristics of the relevant market, in cases similar to this action.[4]

Justice O'Connor also "presumed that when counsel demonstrates considerable ability in overcoming unusual difficulties" —posed, for example, by a case's novelty and complexity, or by a defendant's obstructionist tactics—"counsel will be compensated for those accomplishments by means of an appropriate hourly rate multiplied by the hours expended." *Id.* at 3091. But that is not what has happened in this

action. Only now does the court place a value on all the remaining non-contingency *Johnson* factors.[5] Regardless of any future determination of the propriety of additional adjustment for risk in this case, it is clear that the lodestar fixed in the July 15 order must be adjusted upward on the basis of this action's novelty and difficulty, counsel's skill, the preclusion of other employment that counsel suffered because of their commitment to this matter, the time limitations imposed, and the results obtained. The quality and character of these factors were fully discussed in the July 15 order, and briefly recapitulated above. It is found that they warrant the multiplication of the July 15 sum by a factor of 1.8. Thus, reserving for now only an adjustment for contingency and risk that later may be found appropriate, counsel is hereby awarded an amended total fee under 42 U.S.C. § 2000e–5(k) of (1.8) × ($144,712.70), or $260,482.86.

Finally, it is necessary to note that the problems encountered in awarding fees in this action are *sui generis*. Because the fee issue was joined and briefed before the Supreme Court decided *Delaware Valley*, and ready for decision only after that case was handed down, it suffered from a shift in jurisprudence. Consequently, orders respecting the fee issue in this case had to be rendered piecemeal. It is to be regretted that Hahn's and Owen's quest for the total

---

4. The court has reviewed the affidavits of Evelyn Jo Wilson, Esquire, Joe K. Crews, Esquire, and Curtis B. Stuckey, Esquire. These affidavits are of benefit to the determination of the *hourly rates* prevailing in the local market for similar civil rights actions. However, *Delaware Valley* requires the court to make an additional—and slightly different—inquiry, for the sole purpose of calculating the value of Hahn's and Owen's risk: In the context of the relevant market, what *contingency payment* is required in civil rights cases, over and above flat payment for hourly rates, in order to overcome the difficulties similar plaintiffs otherwise would encounter in finding counsel? It is appropriate to announce here that *Delaware Valley* compels the court to ask this question of litigants in all future attorney's fee cases.

5. Deferred to another day and another case is the question of whether such factors as difficulty, novelty, lost employment, skill, time limitations, result, and the like invariably should be part of the lodestar calculus, and *never* con-

sidered as enhancement or multiplier factors. The *Delaware Valley* majority seems to question the efficacy of a two-step method of calculating the twelve *Johnson* factors (*i.e.*, first, determine a lodestar, and then make a decision regarding the adjustments). But there is nothing in the *Delaware Valley* holding to suggest that any of the twelve *Johnson* factors, including risk of nonpayment, are no longer valid. Whether to designate certain factors as lodestar-determinative or adjustment-determinative in future cases may eventuate in a problem of semantics; likewise, the distinction between lodestar calculation *versus* adjustment calculation may turn out to be purely formalistic.

In this action, however, the court's task is simply to place a value on certain factors that were not "priced" in the July 15 order. The court had specifically segregated out these factors from the original fee determination, and reserved judgment as to their value.

amount of their fees, to which they are clearly entitled, has become a reprise of Zeno's Paradox, but the change in the law compels it so to be. In order to determine whether one additional adjustment, based on contingency, is appropriate, the court must consider evidence describing the value of risk of nonpayment in similar cases in the relevant marketplace. Because this question is one of first impression, parties shall be given more than the usual amount of time to brief it.

Accordingly, it is

ORDERED that the plaintiffs submit evidence and a memorandum, describing the prevailing compensable value of contingency, or the risk of nonpayment, in the relevant market for cases similar to this action, within four weeks of the filing of this order. It is further

ORDERED that the defendant submit their response to the plaintiffs' evidence and memorandum within three weeks of the filing of plaintiffs' submissions. It is further

ADJUDGED that the defendant pay plaintiffs' attorneys the amended sum of $260,482.86 as the partial interim attorney's fee in this action, and that interest on this amended award will be calculated from July 15, 1987, the date on which the court's initial order awarding partial interim attorney's fees was filed.