925 F.2d 1457
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Wilma OLIPHANT, Bernice Howie, Bertha Anderson, Ruth
Coleman, individually and on behalf of all others similarly
situated, Pamela Bennett, Kim Wallace, Randy Tucker, Roberta
Sasportas, Anita Singley, Charles Norwood, Lula B. Miller,
Evelyn Alexander, Yvonne Sessoms, Bertha Chisholm, Lilie Ann
Stewart, Antwerp Duncan, Mildred Glenn, Charlotte Chapter of
the Old North State Medical, Dental and Pharmaceutical
Society, Plaintiffs-Appellees,
v.
CHARLOTTE MEMORIAL HOSPITAL AND MEDICAL CENTER,
Charlotte-Mecklenburg Hospital Authority,
Defendants-Appellants,
Terry Ragin, Plaintiff-Appellee.
 No. 89-2432.
 United States Court of Appeals, Fourth Circuit.
 Argued Feb. 6, 1990.
Decided Feb. 19, 1991.
 
 Appeal from the United States District Court for the Western District of North Carolina, at Charlotte. James B. McMillan, Senior District Judge. (CA-78-326-C-C-M; CA-78-370-C-C-M)
 David Lee Terry, Blakeney, Alexander & Machen, Charlotte, N.C., (Argued), for appellants; John O. Pollard, Blakeney, Alexander & Machen, Charlotte, N.C., on brief. Jonathan Wallas, Ferguson, Stein, Watt, Wallas, Adkins and Gresham, P.A., Charlotte, N.C. (Argued), for appellees; Leslie J. Winner, C. Margaret Errington, Ferguson, Stein, Watt, Wallas, Adkins and Gresham, P.A., Michael A. Sheely, Blum and Sheely, Charlotte, N.C., on brief.
 W.D.N.C., 720 F.Supp. 543.
 REMANDED.
 Before ERVIN, Chief Judge, and DONALD RUSSELL and CHAPMAN, Circuit Judges.
 CHAPMAN, Circuit Judge:
 
 
 1
 This is an appeal from two orders of the district court granting attorneys' fees to the plaintiffs' attorneys for services rendered in two employment discrimination suits brought against the Charlotte Memorial Hospital and Medical Center and the Charlotte-Mecklenburg Hospital Authority. The district court entered two fee orders: one referred to as the Oliphant case and the other as the Norwood case. Since the appeals involved the same issues, they were consolidated for argument, and they are both covered by this opinion.
 
 
 2
 This is not our first encounter with this litigation. We previously decided certain issues in an unpublished opinion, Oliphant v. Charlotte Memorial Hospital, No. 83-1772 (4th Cir. Oct. 10, 1985). In the earlier appeal, we reversed the creation of a sub-class of persons claiming to have been discriminated against by the hospital in its hiring practices, and we reversed the district court's findings as to three individual claimants. We affirmed the remainder of the district court's June 21, 1983 findings and conclusions.
 
 
 3
 On June 21, 1983, the district court found that plaintiffs were the prevailing parties pursuant to 42 U.S.C. Sec. 2000e-5(K) and were entitled to reasonable attorney's fees. After remand, the plaintiffs' attorneys applied for fees and expenses. In February 1987, the district court issued separate orders awarding $300,137.14 in attorneys' fees and $58,152.39 in costs and expenses to the attorneys in the Norwood case and $170,881.75 in fees and $5,275.05 in costs and expenses to the attorneys in the Oliphant case. In setting these fees, the district court determined the hourly rate for each attorney and the number of hours of service rendered by each attorney. The court then increased the number of hours by fifty percent (50%) to compensate the attorneys for the contingent nature of any recovery in the case. Defendants appealed these fee orders, and after a stay of the orders was denied by the district court, a motion for a stay was granted by this court. This stay was conditioned upon the part payment of fees in the amount of $120,104.19 in the Norwood case and $37,480.15 in the Oliphant case. Defendants also posted appropriate bonds to secure the balance of the fees.
 
 
 4
 While the appeals were pending, the Supreme Court decided Pennsylvania v. Delaware Valley Citizens' Council for Clean Air, 483 U.S. 711 (1987) ("Delaware Valley II "), which considered the enhancement of contingent fees in fee-shifting cases. Delaware Valley II imposed certain constraints on a court's discretion in setting such fees. Without hearing oral argument, we remanded the cases for further consideration of the fees in light of "the constraints on contingency under Delaware Valley II." The district court received additional evidence in the form of affidavits and concluded that there should be a one hundred percent (100%) enhancement in the hourly rate for plaintiffs' attorneys and entered judgment accordingly.[1] This doubling of the attorneys' fees increased the hourly rate of Attorney Sumter (the lowest rate) from $90 to $180 and for Attorney Chambers (the highest rate) from $175 to $350. The court justified this doubling of the hourly rate as necessary to compensate for the contingent nature of the attorneys' fees under its interpretation of Delaware Valley II.
 
 
 5
 Appellants claim error by the district court in setting these attorneys' fees because (1) it failed to consider and apply all of the factors set forth in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir.1974), when awarding a 100 percent contingency enhancement to the attorneys' hourly rate; (2) it failed to consider that the plaintiffs were only partially successful and prevailed in only a small percentage of the claims that were originally made; (3) it did not require the claimants' attorneys to present a more detailed statement of what portion of said fees was time spent on unsuccessful claims, but instead accepted the affidavit of one of the attorneys in each case that only ten percent (10%) of the billed hours represented time spent by the attorneys on such unsuccessful claims; (4) there was not evidence to show that any of the plaintiffs' cases had been rejected by any other attorneys or that they had experienced any difficulty in obtaining legal representation; and (5) its findings as to the need for an enhancement of fees were supported by only self-serving affidavits that did not relate to the market conditions at the time the litigation commenced.
 
 
 6
 * We review the district court's action under an abuse of discretion standard. Hensley v. Eckerhart, 461 U.S. 424, 437 (1983). In claiming attorneys' fees, the burden is upon the attorneys seeking the fee to prove the reasonable number of hours worked and the reasonable hourly rate for each attorney. "Where settlement is not possible, the fee applicant bears the burden of establishing entitlement to an award...." Hensley v. Eckerhart, 461 U.S. 424, 437 (1983). Furthermore, "[t]he burden of proving that ... an [upward] adjustment is necessary ... is on the fee applicant." Blum v. Stenson, 465 U.S. 886, 898 (1984).
 
 
 7
 In calculating an attorneys' fee award, the degree of the prevailing party's success is important. The district court "should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." Hensley, 461 U.S. at 435.
 
 
 8
 If ... a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount. This will be true even where the plaintiff's claims were interrelated, nonfrivolous and raised in good faith. Congress has not authorized an award of fees whenever it was reasonable for a plaintiff to bring a lawsuit or whenever conscientious counsel tried the case with devotion and skill. Again, the most critical factor is the degree of success attained.
 
 
 9
 Application of this principle is particularly important in complex civil rights litigation involving numerous challenges to institutional practices or conditions. This type of litigation is lengthy and demands many hours of lawyers' services. Although the plaintiff often may succeed in identifying some unlawful practices or conditions, the range of possible success is vast. That the plaintiff is a "prevailing party" therefore may say little about whether the expenditure of counsel's time was reasonable in relation to the success achieved. In this case, for example, the District Court's award of fees based on 2,557 hours worked may have been reasonable in light of the substantial relief obtained. But had the respondents prevailed on only one of their six general claims, for example the claim that petitioners' visitation, mail, and telephone policies were overly restricted, ... a fee based on the claimed hours clearly would have been excessive.
 
 
 10
 There is no precise rule or formula for making these determinations. The district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success. The court necessarily has discretion in making this equitable judgment. This discretion, however, must be exercised in light of the considerations we have identified.
 
 
 11
 Id. at 436-37 (emphasis added).
 
 
 12
 Appellants argue that plaintiffs had only limited success in both the Oliphant and Norwood cases. In Oliphant, appellants contend that of the fifteen claims of discrimination made by the five individual plaintiffs, relief was granted as to only three. With regard to the eight claims asserted for the class, relief was granted as to only three. In Norwood, of twenty-eight claims for thirteen individual plaintiffs, relief was granted in only eight. With regard to the nine class action claims, only three were successful.
 
 
 13
 Appellants do not challenge the unenhanced hourly rates of the various counsel, nor do they claim that any of the hours charged were not actually worked by the attorneys. However, appellants contend that, from the attorneys' time records, it is often impossible to determine whether an attorney was working on a claim that proved to be successful or was working on an unsuccessful claim. This failure to identify the claim, appellants argue, casts doubt upon the final totals. The claimant attorneys admit that their time records do not adequately identify the individual claims.
 
 
 14
 Appellants also argue that it was incumbent upon the district court to more carefully consider whether the issues on which plaintiffs did not prevail were independent of or intertwined with the issues upon which they did prevail. The district court found that the overall success of the plaintiffs entitled their attorneys to full compensation for all of the hours claimed. "Even though the plaintiffs did not ultimately succeed on every issue, plaintiffs were successful in bringing to an end pervasive race discrimination by the defendants." The district judge reluctantly accepted[2] the affidavits of two of the attorneys stating that ten percent (10%) of their total billed time was spent on the unsuccessful claims. On such a large fee petition with a large number of unsuccessful claims, this across-the-board reduction of ten percent (10%) is simplistic and lacking in the specifics that such a large award should include. This lack of specifics makes appellate review most difficult.
 
 
 15
 The district court made no effort to identify the unsuccessful claims nor did it make any findings as to whether the unsuccessful claims were different claims based upon different facts and legal theories as required by Hensley. The district court's handling of this point indicates, first, that the court thought that the degree of plaintiffs' success was not an issue in setting a reasonable fee in this case, and, second, that it accepted a voluntary reduction of the same small percentage in each case based upon an attorney's affidavit with no underlying facts, number of hours expended, or other data to support its conclusion. In Buffington v. Baltimore County, 913 F.2d 113 (4th Cir.1990), we altered the disposition of some of the Sec. 1983 claims and remanded the award of fees and costs to the district court for reconsideration in light of the more limited success. In doing so, we stated:
 
 
 16
 The most significant issue the district court will have to consider on remand is whether the now unsuccessful claims against Chief Behan and Baltimore County were sufficiently unrelated to those against the individual officers that the hours expended in pursuit of the former claims must be excluded in the fee award calculation. Id. at 127. We also stated that Hensley required plaintiff's counsel to maintain billing time records "in a manner that will enable a reviewing court to identify distinct claims." Hensley, 461 U.S. at 437. In the present case this was not done, and although all of the claims presented against the defendants related in some way to discriminatory employment practices, this does not relieve the plaintiffs' attorneys or the district court of the responsibility of complying with the mandates of Hensley.[3]
 
 
 17
 We find that the district court's approach to calculating attorneys' fees disregards the clear mandate of Hensley. The district court's orders focus only on the favorable results which were obtained on behalf of the plaintiffs, but make no attempt to compare these results with the scope of the litigation as a whole. Indeed, no mention is made of the comparatively greater number of unsuccessful claims of plaintiffs. While Hensley rejected a rigid "mathematical approach comparing the total number of issues in the case with those actually prevailed upon," 461 U.S. at 435 n. 11, it did not render such evidence irrelevant or improper when determining reasonable attorneys' fees. The defendants in Hensley, in opposing the plaintiffs' request for attorneys' fees, suggested a method of calculating fees based strictly on such a mathematical approach. It was in response to this suggestion that the Court found that such an approach may not be appropriate in some cases because of its failure to consider the relative importance of the various issues, interrelation of the issues, difficulty in identifying issues, or the extent to which a party may prevail on various issues.
 
 
 18
 Charlotte Memorial has not suggested that a strictly mathematical approach serve as the sole basis for determining attorneys' fees. Instead, it contends that the district court erred by failing to address the degree of success enjoyed by the plaintiffs. We agree. The district court has failed, as Hensley instructs, to consider the relevant importance of the various issues and the interrelation of these issues. This class action has been immense in scale with plaintiffs alleging discrimination in nearly every aspect of employment. As the Court noted in Hensley, "[t]he congressional intent to limit [attorney fee] awards to prevailing parties requires that ... unrelated claims be treated as if they had been raised in separate lawsuits, and therefore no fee may be awarded for services on the unsuccessful claims." Hensley, 461 U.S. at 435 (footnote omitted). We find that the district court, while acknowledging that the plaintiffs did not prevail on every issue, erred in failing to consider the relevant importance of the issues raised by plaintiffs and their interrelation.
 
 II.
 
 19
 In the present litigation, the district court, after discussing the Johnson factors, made the crucial calculation on the question of contingency. The district court enhanced the hourly rate of the attorneys by one hundred percent (100%). The district court and the parties looked to the opinion of Justice O'Connor in Delaware Valley II for support. In Spell v. McDaniel, 824 F.2d 1380 (4th Cir.1987), we observed: "Within the divided Delaware Valley Court, Justice O'Connor's position in concurrence controls on the circumstances in which a contingency multiplier may ever be allowable." Id. at 1404.
 
 
 20
 In Delaware Valley II, Justice O'Connor found that Congress did not intend to foreclose consideration of contingency in setting a reasonable fee under fee-shifting statutes, and stated:
 
 
 21
 I also agree that compensation for contingency must be based on the difference in the market treatment of contingent fee cases as a class, rather than on an assessment of the "riskiness" of a particular case. But in my view the plurality is also correct in holding that the "novelty and difficulty of issues presented, and ... the potential for protracted litigation," ante, at 726, are factors adequately reflected in the lodestar, and that the District Court erred in employing a risk multiplier in the circumstances of this case.
 
 
 22
 The private market commonly compensates for contingency through arrangements in which the attorney receives a percentage of the damages awarded to the plaintiff. In most fee-shifting cases, however, the private market model for contingency compensation will provide very little guidance. See Riverside v. Rivera, 477 U.S. 561, 573-576 (1986). Thus, it is unsurprising that when courts have enhanced fee awards to compensate for risks, "[p]inpointing the degree of risk [has been] one of the most subjective and difficult components of the fee computation process, and one which [has been] apt to lead to imprecision in the final award." [Citation omitted.]
 
 
 23
 * * *
 
 
 24
 * * *
 
 
 25
 To be "reasonable," the method for calculating a fee award must be not merely justifiable in theory but also objective and nonarbitrary in practice. Moreover, if the concept of treating contingency cases as a class is to be more than symbolic, a court's determination of how the market in a community compensates for contingency should not vary significantly from one case to the next. I agree with the plurality that without guidance as to the trial court's exercise of discretion, adjustment for risk could result in "severe difficulties and possible inequities." Ante at 728. In my view, certain constraints on a court's discretion in setting attorney's fees are appropriate.
 
 
 26
 First, District Courts and Courts of Appeals should treat a determination of how a particular market compensates for contingency at controlling future cases involving the same market. Haphazard and widely divergent compensation for risk can be avoided only if contingency cases are treated as a class; and contingency cases can be treated as a class only if courts strive for consistency from one fee determination to the next. Determinations involving different markets should also comport with each other. Thus, if a fee applicant attempts to prove that the relevant market provides greater compensation for contingency than the markets involved in previous cases, the applicants should be able to point to differences in the markets that would justify different rates of compensation.
 
 
 27
 Second, at all times the fee applicant bears the burden of proving the degree to which the relevant market compensates for contingency. See Blum v. Stenson, 465 U.S. 886, 898 (1984) ("The burden of proving that such an adjustment is necessary to the determination of a reasonable fee is on the fee applicant"); Hensley v. Eckerhart, 461 U.S. 424, 437 (1983) ("Where settlement is not possible, the fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and the hourly rates"). I would also hold that a court may not enhance a fee award anymore than necessary to bring the fee within the range that would attract competent counsel. I agree with the plurality that no enhancement for risk is appropriate unless the applicant can establish that without an adjustment for risk the prevailing party "would have faced substantial difficulties in finding counsel in the local or other relevant market." Ante, at 731.
 
 
 28
 Finally, the court should not award any enhancement based on "legal" risk or risks peculiar to the case. The lodestar--"the product of reasonable hours times a reasonable rate," Hensley v. Eckerhart, supra, at 434--is flexible enough to account for great variation in the nature of the work performed in, and the challenges presented by, different cases. "The novelty and complexity of the issues" raised in the case "presumably [would be] fully reflected in the number of billable hours recorded by counsel." Blum, supra, at 898. The same can be said for most other problems posed by the litigation, such as the tenacity of the defendant. The "special skill and experience of counsel should be reflected in the reasonableness of the hourly rates." Ibid. Thus it is presumed that when counsel demonstrates considerable ability in overcoming unusual difficulties that have arisen in a case, counsel will be compensated for those accomplishments by means of an appropriate hourly rate multiplied by the hours expended.
 
 
 29
 Delaware Valley II, 483 U.S. at 731-34.
 
 
 30
 Based on these constraints, the one hundred percent (100%) enhancement awarded by the district court must be reversed. The district court failed to consider that, according to Delaware Valley II, the fee applicant bears the burden of establishing that he " 'would have faced substantial difficulties in finding counsel in the local or other relevant market.' " Id. at 733. Neither the findings of the district court nor the evidence indicates that the one-hundred percent (100%) enhancement in this case was necessary to attract competent counsel. There is no evidence in the record that the plaintiffs in this case encountered any, let alone substantial, difficulty in obtaining counsel. In fact, in the 1987 fee order, the district court found that "[t]here was no evidence that other attorneys refused to take this case." The district court, in its 1989 fee order, found that the conditions were the same as when it had entered the 1987 order. There was still no evidence that anyone had refused to take either the Oliphant or Norwood cases. In short, there is no evidence of any difficulty in finding competent counsel to litigate either case when they were initiated in 1978.
 
 
 31
 Delaware Valley II also instructs that, in determining whether a fee enhancement is necessary, courts should consider "how a particular market compensates for contingency...." 483 U.S. at 733. In calculating the one-hundred percent (100%) enhancement in this case, the district court relied on affidavits from three attorneys practicing law in the state of Florida. While each of these attorneys offered valuable insight into employment discrimination litigation in the state of Florida, these affidavits regarding the Florida market's need for an enhancement to attract competent counsel simply are not relevant. In determining whether a fee enhancement was necessary to attract competent counsel in this case, the district court should have limited its focus to the Charlotte, North Carolina market. We find that, in determining whether a fee enhancement was necessary in this case, the district court erred by considering the Florida contingent-fee market.
 
 
 32
 In addition to considering an irrelevant geographic market, the district court also erred in its focus on the contingent-fee market at the time the fee orders were issued. The proper time frame for analysis of the contingent-fee market is the time at which counsel undertook representation of the plaintiffs and litigation was initiated, not when the fees were awarded. Again, under the Delaware Valley II rule, the issue is whether the "prevailing party 'would have faced substantial difficulties in finding counsel in the local or other relevant market.' " 483 U.S. at 731 (emphasis added). See also Spell v. McDaniel, 824 F.2d 1380, 1405 (4th Cir.1987) (focusing on the availability of competent counsel at the time litigation was initiated); Leroy v. City of Houston, 831 F.2d 576, 584 (5th Cir.1987) (focusing on whether plaintiff "would have been unable to find counsel in the local market"); McKenzie v. Kennickell, 875 F.2d 330, 337 (D.C.Cir.1989) ("We repeat that the relevant time frame is the period in which the case was undertaken by counsel and the suit was commenced, rather than the time the fees were awarded."). In this case, the district court improperly focused on the time period in which the fees were awarded. Six of the district court's seven findings with regard to the need for a fee enhancement deal with the contingency market at the time the fees were awarded.[4] These findings show that the district court's analysis of the contingent-fee market and its conclusion regarding the "substantial difficulty" requirement were improperly derived from and founded upon matters the district court perceived to be in existence at the time the fee orders were issued. We find that the district court erred by enhancing the award of attorneys' fees in this case.
 
 III.
 
 33
 We conclude that under Delaware Valley II no enhancement of the plaintiffs' attorneys' fees is justified by the record in this case.[5] It would serve no useful purpose to remand for a further consideration of fees by the district court, particularly in light of the inability of the attorneys to separate the time consumed by unsuccessful claims from the time spent on successful claims, because of the lack of time records that make this distinction. We remand to the district court and direct that it enter judgment as fees for the plaintiffs' attorneys as set forth in the following schedule.
 
 
 34
 REMANDED WITH INSTRUCTIONS.
 
 
 35
 ERVIN, Chief Judge, and JAMES B. McMILLAN, joined.
 
 
 36
 ATTACHMENT
OLIPHANT CASE
Attorney Hours Rate Total
Sheely 688.34 $140 $96,367.60
Brooks 131.10 125 16,387.50
Blum 2.30 125 287.50
 -----------
 $113,042.60
 Plus Costs and Expenses 5,275.05
 -----------
 $118,317.65
 Less Previous Payment* 39,480.15
 -----------
 TOTAL DUE $78,837.50
 -----------
 -----------
NORWOOD CASE
 Hours Hours
Attorney Before 4/21/86[6] After 4/21/86[7] Rate Total
Chambers 483.43 $175 $ 84,600.25
Daly 90.67 150 13,600.50
Belton 8.55 140 1,197.00
Wallas 45.40 43.3 140 12,418.00
Watt 1.0 140 140.00
Gresham 3.0 125 375.00
Winner 3.37 125 421.25
Nockleby 324.85 109.95 115 50,002.00
Glazer 242.10 100 24,210.00
Sumter 8.77 .25 90 811.80
 -----------
 $187,775.80
 Plus Costs and Expenses 58,152.39
 -----------
 $245,928.19
 Less Previous Payment* 120,104.19
 -----------
 TOTAL DUE $125,824.00
 ----
 ----
 
 
 
 [1]
 This increase of the contingency enhancement on remand from fifty percent (50%) in the 1987 order to one hundred percent (100%) in the 1989 order came as a surprise. In our remand, we directed that the district court should have the opportunity to reconsider the attorneys' fees in light of the constraints placed by Delaware Valley II on the district court's discretion in using a contingency multiplier
 
 
 [2]
 The district judge expressed his belief that there should be no reduction of attorneys' fees, but because the attorneys conceded that ten percent (10%) of their time was spent on unsuccessful claims, he would go along with them and reduce fees accordingly. The district court stated that this was
 a reasonable response to defendants' claims that the fee should be reduced because plaintiffs did not prevail on all of their claims. The 10 percent figure is supported by the 1988 affidavit of Julius LeVonne Chambers in paragraph 6, docket # 182. The 10 percent reduction of the hours spent is not mandated by the circumstances of this case. Nevertheless, out of an abundance of caution and to err on the side of conservatism, the court will adopt the 10 percent reduction in Michael Sheely's hours set forth in plaintiffs' April 18, 1988 motion. (Emphasis in original.)
 
 
 [3]
 Certainly the attorneys' time spent in their attempt to create the sub-class of persons claiming discrimination in hiring practices, which was reversed in the first appeal, took considerable time, but such unsuccessful time cannot be identified from the records
 
 
 [4]
 The court's only finding with regard to the market in 1978, the year in which this litigation commenced, relies primarily on the self serving affidavit of Attorney Chambers, counsel for plaintiffs, whose hourly rate was doubled from $175 to $350
 
 
 [5]
 In setting the attorneys' unenhanced hourly rates pursuant to Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir.1974), the district court gave considerable attention to the experience, reputation and ability of each attorney. The district court offered high praise for each of the thirteen (13) attorneys and noted the considerable experience many of them had litigating employment discrimination cases in the Charlotte, North Carolina area. While this experience supports the district court's determination of the relatively high hourly rates on an unenhanced basis, it does not justify an enhancement of those rates. The experience and reputation of these attorneys is additional evidence that plaintiffs had no difficulty in finding well qualified attorneys to represent them without an enhancement of fees
 
 
 [6]
 These totals reflect a ten percent (10%) reduction for hours worked on unsuccessful claims
 
 
 [7]
 The hours expended after the entry of the final judgment in the Stage I proceedings are calculated pursuant to the district court's March 16, 1987 order concerning the method to be used in awarding of fees for Stage II proceedings
 
 
 *
 Sum paid by defendants pursuant to the April 29, 1987 order entered by the district court